**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ARKO EXECUTIVE SERVICES, INC.** **Plaintiff,** | ) | |
| v. | ) | **No. 05-1193C; 06-0296C** |
| **THE UNITED STATES,** **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Arko Executive Services, Inc., pursuant to Rule 56 of the Rules of the United States Court of Federal Claims and this Court's July 7, 2006 Order, moves for summary judgment on the issue of its entitlement to payment pursuant to FAR clause 52.237-3(d) CONTINUITY OF SERVICES (JAN 1991), and states as follows:

## I. STATEMENT OF THE CASE

The contract here in issue, Contract No. S-CY-600-0006 ("Contract"), was awarded by the United States Department of State and pursuant thereto the Plaintiff performed guard services for the protection of the United States Embassy, Nicosia, Cyprus.

The Contract contained 14 pages of very detailed pricing provisions. Mutually agreed prices are specified at pp. 5-9 for the Base Year, April 01, 2000-March 31, 2001; at page 9 for the First Option Year, April 01, 2001–March 31, 2002; at pp. 10-13 for the Second Option Year, April 1, 2002 – March 31, 2003; at pp. 14-15 for the Third Option

Year, April 1, 2003 – March 31, 2004; and at pp. 16-17 for the Fourth Option Year, April 1, 2004 – March 31, 2005. The total ceiling price for the base period and for each of the four option years is set forth on page 18. These prices were quoted and agreed to by the Contractor on the basis that the total duration of the contract shall not exceed five years (i.e., that the contract duration shall not extend beyond March 31, 2005 and the contract shall expire as of that date.) Guard services beyond March 31, 2005 were not anticipated, and no rates were contained or specified in the contract for guard services after such date.

For the period subsequent to March 31, 2005, Defendant undertook to contract with a company other than Plaintiff to provide guard services for the United States Embassy, Nicosia notwithstanding that Plaintiff had satisfactorily performed the work called for by the Contract during its five-year duration.

On February 8, 2005, Plaintiffs' Executive Vice President/Chief Financial Officer inquired whether post contract services of Plaintiff would be needed by the Embassy, Nicosia "beyond the March 31st expiration date" of the contract, and in response to a follow up February 15, 2005 email inquiry from Plaintiff, the Contracting Officer advised that no post contract services would be required. A March 7, 2005 email from Plaintiff's Executive Vice President/Chief Financial Officer to the Contracting Officer stated:

> "On February 8, 2005, by letter dated February 7, 2005 to you from me, you were asked whether the Embassy would require Arko services beyond the March 31st expiration date. A reply was requested by February 15th. Notices to employees and the government regarding loss of employment that are required by Cyprus law on pain of significant liability necessitated prompt notification of Embassy requirements. You did not respond by February 15th. I sent you another email on February 15th indicating the Company presumed that your lack of response meant that no post contract services would be required and that Arko would move forward with the employee and government notices. You responded to the email and said that the Company was correct that the Embassy did not anticipate the need for post contract services. Arko proceeded to give the employees and government notice that

> employment with Arko would end on March 31, 2005. The notices were transmitted on or about February 28th. On March 4, 2005 at 2:00 pm you presented to our local agent Mr. Douglas Duncan a contract modification for a 1 month contract extension…" (Emphasis supplied)

On March 4, 2005, the Contracting Officer tendered to Douglas Duncan, Plaintiff's Project Manager in Cyprus, Modification No. 21 to the Contract, which document purported to unilaterally require Plaintiff to extend the contract duration period for 30 days, i.e., from April 1 to April 30, 2005. This document cited FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) as the authority for the Contracting Officer to issue Modification No. 21. A page appended to Modification No. 21 set forth prices unilaterally set by the Contracting Officer for the guard services to be performed during the period April 1 to April 30, 2005, which prices were inadequate and unreasonable. These prices were clearly not among the mutually agreed prices "specified" in the contract. Another page provided information as to the funding for the April work.

Plaintiff, through its attorney, emailed a letter March 14, 2005 to the Contracting Officer advising that FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) did not provide authority for the Contracting Officer to issue Modification No. 21, but that FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) clause of the Contract did provide authority for Plaintiff to provide the services vitally needed by the Government subsequent to March 31, 2005, during the period of transition to the new contractor.

On March 15, 2005, the Plaintiff emailed a letter jointly from its Executive Vice President/CFO and its General Counsel to the Contracting Officer advising of the Company's willingness to provide the needed post-contract guard services subsequent to March 31, 2005 under FAR 52.237-3. The letter also addressed the March 4, 2005

change of position of the Embassy regarding post-contract services, stating:

> " . . . Arko wants to do what it can to ameliorate the situation. On the other hand, the Embassy must consider that it has compromised Arko's ability to retain guards and thus provide service by declining Arko's offer of post contract services, then reversing itself 16 days later after the Embassy knew Arko had given its guards and the Cyprus government termination notices mandated by local law."

In a final decision letter dated March 18, 2005, the Contracting Officer stated that he respectfully disagreed with the interpretation of the attorney for Plaintiff regarding use of FAR clause 52.217-8 and directed that Plaintiff provide guard services, "in accordance with Modification No. 21 as amended" not only for the month of April 2005, as initially stated by Modification No. 21, but also for the month of May 2005, stating.

> " . . . fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow enough time for the new contractor to be fully operational and will avoid having to extend later on. I have no intention of making any additional extensions under this clause.
>
> Arko is therefore required to provide performance for the period April 1, 2005 through May 31, 2005 in accordance with Modification No. 21 as amended." (Emphasis supplied)

Plaintiff disputed the final decision letter and advised the Contracting Officer on April 7, 2005 that it would proceed under protest to provide guard services during the period April 1, 2005 through May 31, 2005, and on the basis that Plaintiff would be compensated for such phase-out services in accordance with FAR 52.237-3 CONTINUITY OF SERVICES.

Plaintiff appealed to the United States Court of Federal Claims the March 18, 2005 final decision of the Contracting Officer and the related final decision dated March

21, 2006 denying Plaintiff entitlement to payment in accordance with FAR 52.237-3 as being erroneous and contrary to law.

## II. PLAINTIFF IS ENTITLED BY LAW TO ENTRY OF A SUMMARY JUDGMENT GRANTING PLAINTIFF ENTITLEMENT TO PAYMENT IN ACCORDANCE WITH FAR 52.237-3 AND THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE TO PRECLUDE ENTRY OF SUCH JUDGMENT

> FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) states:
>
> (a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without interruption and that, upon contract expiration, a successor, either the Government or another contractor, may continue them. The Contractor agrees to . . . exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.
>
> * * *
>
> (d) <u>The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agreed period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract</u>. (Emphasis supplied).[1]

[1] FAR 52.237-3 was appropriately included in the Contract. The election by the Embassy to obtain the guard services vital to the Embassy in the post-contract months of April and May 2005 by exercise of FAR 52.217-8 was unlawful and arbitrary. FAR 37.110 states:

> " (c) The contracting officer may insert the clause at 52.237-3, Continuity of Services, in solicitations and contracts for services, when –
> (1) The services under the contract are considered vital to the Government and must be continued without interruption and when, upon contract expiration, a successor, either the Government or another contractor, may continue them; and
> (2) The Government anticipates difficulties during the transition from one contractor to another or to the Government. Example of instances where use of the clause may be appropriate are services in remote locations or services requiring personnel with special security clearances."

Plaintiff and the Contracting Officer recognized that the guard services that had been provided under the contract were "vital to the Government" and "must be continued without interruption" beyond the contract's expiration on March 31, 2005. Plaintiff provided the Embassy the vitally needed phase-out guard services subsequent to March 31 under protest and without interruption during the months of April and May 2005 on the basis that the services were being provided under, and Plaintiff would be compensated therefor, in accordance with FAR 52.237-3.

**Plaintiff's Motion: Plaintiff submits that FAR clause 52.237-3 is clearly applicable under the facts and circumstances here, and Plaintiff hereby moves for Summary Judgment on the issue of its entitlement to payment pursuant to FAR clause 32.237, stating that (1) it is entitled to judgment as a matter of law, and (2) that there is no genuine issue of material fact in dispute. Accordingly, Plaintiff submits it is entitled to a Summary Judgment granting Plaintiff entitlement to payment in accordance with FAR 52.237-3(d).**

Summary judgment is appropriately granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c) (providing that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Cross Medical. Prods., Inc. v. Medtronic Sofamor Danek Inc.*, 424 F.3d 1293, 1302 (Fed. Cir. 2005). It is well-settled that only disputes over material facts, defined as those facts that might affect the outcome of the suit under governing law, preclude an

entry of judgment. See *Anderson*, 477 U.S. at 248. Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *See id.*

## III. ISSUANCE OF MODIFICATION NO. 21 WAS BEYOND THE AUTHORITY OF THE CONTRACTING OFFICER, WAS UNLAWFUL AND MODIFICATION NO. 21 WAS VOID

The Contract is a multiple year contract containing options and in accordance with FAR section 17.000 is subject to the policies and procedures prescribed for this special contracting method by FAR Subpart 17.2 Options.

Modification No. 21 violates FAR 17.204(e): FAR Section 17.204(e) requires that for Contract No. S-CY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, "the total of the basic and option periods shall not exceed 5 years in the case of services". The total of the basic (one year) and the option periods (four years) of the Contract was five years prior to the purported exercise of the FAR 52.217-8 option. If the Contract were to be extended for two additional months by exercise of an option, the total of the basic (one year) and option periods (four years and two months) would be five years and two months. The Contracting Officer, however, does not have authority or freedom to ignore or to violate the mandatory requirement of FAR 17.204(e) that "the total of the basic and option periods shall not exceed 5 years in the case of services." (Emphasis supplied)

Modification No. 21 violates FAR 204(e), FAR 17.204(a) and FAR 52.217-9: FAR Section 17.204(a) requires that Contract No. S-CY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 "shall specify . . . the overall duration of the contract, including any extension." As required by FAR 17.204(a), the Contract specifies that "The total duration of this contract, including the exercise of any options under this clause, shall not exceed five years", FAR 52.217-9(c) OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 1989), at page 47.

(Emphasis Supplied). The Contracting Officer's finding in the March 21, 2006 Final Decision letter that "the 5-year limitation contained in FAR 52.217-9 is not applicable to extensions of services ordered under FAR 52.217-8" ignores and violates the requirements of FAR 17.204(e), 17.204(a) and FAR 52.217-9.

Modification No. 21 violates FAR 52.217-8: FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) states with specificity the FAR mandated criteria when the option may be used. The first two sentences of such clause greatly restrict its use:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the Schedule. (Emphasis supplied).

A Contracting officer may exercise the option to require a contractor to continue performance of services only in circumstances where continuation of such services is both "within the limits" and "at the rates" specified in the contract." (Emphasis supplied). A Contracting Officer does not have the authority or the freedom to use FAR 52.217-8 to order continued performance of services under circumstances where such continued performance is not both "within the limits" and "at the rates" specified in the contract. The exercise of the option here was in violation of the mandated requirements of FAR 52.217-8. First, the proposed extension is beyond the maximum five year "limit" specified in the contract. Second, the rates are not rates that were "specified" in the contract. Third, even rates specified in the contract may be adjusted only as a result of

revisions to prevailing labor rates provided by the Secretary of Labor, and clearly there has been no such revision.

Modification No. 21 violates FAR 37.111: The Contracting Officer's January 2006 Final Decision cites FAR 37.111 to support its contention that the option under FAR 52.217-8 was properly exercised. However, FAR 37.111 does not support the Contracting Officer's position but instead supports Plaintiff.

FAR 37.111 Extension of services states:

> "The contracting officer may include an option clause (see 17.208(f)) in solicitations and contracts (i.e., FAR 52.217-8)which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract." These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. (Emphasis supplied).

Again, the services ordered are required to be performed (1) during a period within "the limits" specified in the contract; (2) "at rates" specified in the contract; and (3) any revision of the specified rates must be the result of revisions to prevailing labor rates provided by the Secretary of Labor." The Contracting Officer does not have the freedom or the authority to ignore or violate these mandatory requirements.

In summary, the Contracting Officer, in issuing Modification No. 21, violated the mandated FAR policies, procedures and provisions prescribed by FAR Subpart 17.2, and accordingly Modification No. 21 was unlawfully issued and is void.

The FAR provisions cited above have the force and effect of law. These FAR provisions impact directly the interests of not only the Government but also the interests of Plaintiff. The violation of these provisions can be asserted by a contractor to its benefit. Moran Bros., Inc. v. United States, 346 F.2d 590, 171 Cl. Ct. 245 (1965); G.L.

Christian & Associates v. United States, 312 F.2d 418; reh'q denied, 160 Ct. Cl. 58; cert denied. 375 U.S. 954 (1963).

## CONCLUSION

For the foregoing reasons, Plaintiff submits that it is entitled to Summary Judgment on the issue of its entitlement, and Plaintiff accordingly respectfully requests issuance of an order granting Plaintiff entitlement to payment pursuant to FAR 52.237-3(d) CONTINUITY OF SERVICES.

Respectfully submitted,

/s/ MICHAEL J. SHEA
MICHAEL J. SHEA
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004-2415
Phone: (202) 383-0161
Fax: (202) 637-3593

Of Counsel:
Lewis S. Wiener
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004-2415
Phone: (202) 383-0140
Fax: (202) 637-3593

Dated this 31st day of August, 2006