# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARKO EXECUTIVE SERVICES, INC.<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-1193C; 06-0296C |

## PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56(h) of the United States Court of Federal Claims and this Court's July 7, 2006 Order, Plaintiff Arko Executive Services, Inc. respectfully hereby files Plaintiff's Proposed Findings of Uncontroverted Facts, setting forth all the material uncontroverted facts upon which Plaintiff relies in connection with Plaintiff's Motion for Summary Judgment, which is being filed concurrently.

THE MATERIAL FACTS UPON WHICH PLAINTIFF BASES ITS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ITS ENTITLEMENT TO PAYMENT PURSUANT TO FAR CLAUSE 52.237-3 CONTINUITY OF SERVICES OF THE CONTRACT

1. Contract No. S-CY-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 includes FAR clause 52.237 CONTINUITY OF SERVICES (JAN 1991) at pages 47-48. (Defendant's Answer, paragraph 13; Contract, pages 47-48)[1]

2. FAR clause 52.237 CONTINUITY OF SERVICE (JAN 1991) of the Contract states at subparagraphs (a) and (d):

---

[1] Defendant's Answer to the Complaint in 06-0296C is referred to herein as "Defendant's Answer".

> CONTINUITY OF SERVICES (JAN 1991)
>
> (a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without interruption and that, upon contract expiration, a successor, either the Government or another contractor, may continue them. The Contract agrees to (1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.
>
> . . .
>
> (d) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agree period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract. (Emphasis supplied)

(Defendant's Answer, paragraph 13)

3. The Contract contained 14 pages of very detailed pricing provisions. Prices are specified at pp. 5-9 for the Base Year, April 01, 2000-March 31, 2001; at page 9 for the First Option Year, April 01, 2001 –March 31, 2002; at pp. 10-13 for the Second Option Year, April 1, 2002 – March 31, 2003; at pp. 14-15 for the Third Option Year, April 1, 2003 – March 31, 2004; and at pp. 16-17 for the Fourth Option Year, April 1, 2004 – March 31, 2005, for each of many different Labor Categories for Standard Services as well as for Additional or Emergency Services, for Vehicles and for Reimbursable Materials. The total ceiling price for the base period and for each of the four option years is set forth on page 18. No rates were contained or specified by the contract for guard services rendered after March 31, 2005. (Defendant's Answer, paragraph 14, admits to the extent supported by the Contract stated)

4. The Government solicited and awarded Contract No. S-CY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 on the basis that the total duration of the contract shall not exceed five years (i.e., the contract duration shall not

extend beyond March 31, 2005). (Defendant's Answer, paragraph 15, admitted to the extent supported by the solicitation and the Contract.)

5. March 31, 2005 was the date on which the total duration of the contract reached five years. (Defendant's Answer, paragraph 17)

6. For the period subsequent to March 31, 2005, Defendant undertook to contract with a company other than Plaintiff to provide guard services for the United States Embassy Nicosia. (Defendant's Answer, paragraph 18)

7. By letter dated February 7, 2005 from Plaintiff's Executive Vice President / CFO to the Contracting Officer, the Plaintiff's Executive Vice President / CFO asked whether the Embassy would require services "beyond the March 31, 2005 expiration date of the contract." A reply was requested by February 15 since notices to employees and the local government regarding loss of employment are required by Cyprus law on pain of significant liability. (Defendant's Answer, paragraph 19, admitted to the extent supported by the documents stated)

8. The Contracting Officer did not respond by February 15, and Plaintiff's Executive Vice President sent another email on February 15th indicating the company presumed that the Contracting Officer's lack of response meant no post contract services would be required and that Arko would move forward with the employee and government notices. (Defendant's Answer, paragraph 19, admitted to the extent supported by the documents stated.)

9. The Contracting Officer responded to the email advising that the company was correct that the Embassy did not anticipate the need for post contract services. Arko proceeded to give the employees and government notices. The notices were transmitted on or about February 28th. (Defendant's Answer, paragraph 19, admitted to the extent supported by the documents stated.)

10. On March 4, 2005, the Contracting Officer tendered to Plaintiff's Project Manager in Cyprus Modification No. 21 to the Contract purporting to extend the contractual period for 30 days, from April 1 to April 30, 2005. This document cited FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) as the Contracting Officer's authority for issuance of this unilateral directive. A page setting forth prices for the work to be performed during the period April 1, 2005 to April 30, 2005 was appended to Modification No. 21, as well as a page providing information as to funding for the work. (Defendant's Answer, admitted to the extent supported by the document cited; Modification No. 21, Exhibit 2 to the Complaint in Docket No. 06-0296C.)

11. Plaintiff, through its attorney, advised the Contracting Officer by letter sent by email on March 14, 2005, that FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) did not provide the Contracting Officer authority to issue Modification No. 21, but that FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) did provide authority for Plaintiff to provide the services vitally needed subsequent to the March 31, 2005 expiration of the Contract in connection with the transition to the new contractor. (Defendant's Answer, paragraph 21, admitted to the extent supported by the document cited.)

12. The Contracting Officer responded in his final decision letter dated March 18, 2005, that he respectfully disagreed with the interpretation stated by Arko's attorney and advised that "Arko is therefore required to provide performance" of guard services not only during April 2005 but also during May 2005, stating:

> "In addition, fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow enough time for the new contractor to be fully operational and will avoid having to extend later on.

(Exhibit 1 to the Complaint in Docket 05-1193C)

13. Plaintiff, through its attorney and its personnel, advised the Contracting Officer that FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) did not provide authority for the issuance of Modification No. 21 (i.e., such clause did not provide authority for the Contracting Officer to order extension of the duration of the contract beyond five years and to order Plaintiff to provide services in April 2005), but that FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) did provide authority for Plaintiff to provide services subsequent to March 31, 2005, during the period of transition to the new contractor. (Defendant's Answer, paragraph 21, admitted to the extent supported by the document.)

14. Plaintiff continued, through its attorneys and its personnel, to advise the Contracting Officer that Modification No. 21 was, in effect, void and of no effect since FAR 52.217-8 OPTION TO EXTEND SERVICES did not provide the Contracting Officer authority for its issuance; that Plaintiff would continue, under protest, to provide the guard services; and that Plaintiff would seek compensation under FAR 52.237-3 CONTINUITY OF SERVICES for the guard services it rendered during the post contract period commencing April 1, 2005. (Defendant's Answer, paragraph 22, admitted to the extent supported by the document.)

15. A final decision of the Contracting Officer, set forth in a letter dated March 18, 2005 and received by email by Plaintiff on March 21, 2005, directed, in effect, that Plaintiff, "in accordance with Modification No. 21 as amended," provide guard services (i.e., during a period of transition between contractors) for a period of not only the 30 days of April 2005 initially at issue but also now for an additional 31-day period extending through May 31, 2005. The final decision also stated that Plaintiff's entitlement to compensation for providing guard services subsequent to March 31, 2005 shall be in accordance with Modification No. 21, i.e., FAR

52.217-8 OPTION TO EXTEND SERVICES. (Defendant's Answer, paragraph 23, admitted to the extent supported by the document cited.)

16. Plaintiff provided Defendant the guard services during the period April 1, 2005 through May 31, 2005. (Defendant's Answer, paragraph 25.)

17. Plaintiff submitted its certified claim for payment in accordance with FAR 52.237-3 CONTINUITY OF SERVICES for providing such services to Defendant, and entitlement to such claim was denied by the Contracting Officer on the basis that "the option was properly exercised under FAR 52.217-8 in a Final Decision letter dated March 31, 2006. (Final Decision of March 21, 2006, Exhibit 1 to the Complaint in Docket No. 06-296C.)

THE MATERIAL FACTS

AS TO WHY MODIFICATION NO. 21 WAS

NOT PROPERLY AUTHORIZED OR ISSUED AND WAS NOT VALID

18. The Contract includes options. (Contract, page 30)

19. FAR 17.204(e) states in part that "the total of the basic and option periods shall not exceed five years in the case of services." (FAR Section 17.204(a))

20. FAR 17.204(a) states in part that "The contract shall specify limits on … the overall duration of the term of the contract, including any extension." (Emphasis supplied) (FAR Section 17.204(a))

21. Contract No. S-CY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 states that "The total duration of the contract, including the exercise of any options under this clause, shall not exceed five years." The "limits" on the duration of the contract is accordingly five years. (Contract, p. 47, FAR 52.217-9(c))

22. March 31, 2005 was the date on which the total duration of the contract reached five years. (Defendant's Answer, paragraph 17)

23. Modification No. 21 directing Contractor to perform guard services in April 2005 called for performance of work beyond the March 31, 2005 date on which the total duration of the contract was reached and beyond the "limits" on the term of the Contract. (Based on Defendant's Answer, paragraph 17.)

24. The first sentence of FAR clause 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) states: "The Government may require continued performance of any services within the limits and at the rates specified in the contract." However, these rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor." (Emphasis supplied) (FAR 52.217-8)

25. The third and fourth sentence of FAR section 37.111 Extension of Services, which prescribes policies and procedures with respect to the use of FAR clause 52.217-8, state:

> "In order to avoid negotiation of short extensions to existing contracts, the contracting officer may include an option clause (see 17.208(f)) in solicitations and contracts which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract. However, these rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor." (Emphasis supplied)

(FAR section 37.311)

26. The prices for guard services in April 2005 stated on the page containing prices appended to Modification No. 21 were prices that were not "specified" in the Contract prior to issuance of Modification No. 21. (Based on Defendant's Answer, paragraph 14.)

27. The "prices" or "adjusted rates" for services in April 2005 stated on the page containing prices appended to Modification No. 21 were not represented to be the result of "revisions to prevailing labor rates provided by the Secretary of Labor". (Exhibit 2, page 3, to Complaint in Action 06-296)

28. Neither Modification No. 21 nor the Contracting Officer's Final Decision letter of March 20, 2005, contained a pricing schedule (or specified any "rate") for work to be performed in May 2005.

Respectfully submitted,

/s/ MICHAEL J. SHEA
MICHAEL J. SHEA
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2415
Phone: (202) 383-0161
Fax: (202) 637-3593
Attorneys for Plaintiff

Of Counsel:
Lewis S. Wiener
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2415
Phone: (202) 383-0140
Fax: (202) 637-3593

Dated this 31st day of August, 2006