IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARKO EXECUTIVE SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 05-1193 and 06-296 |
| | ) | (Judge Allegra) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530
Telephone: (202) 353-0536
Facsimile: (202) 305-7643

October 2, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE(S)**

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. FAR Clause 52.237-3 (Continuity of Services) Did Not Apply To The Services Performed By Arko From April 1, 2005 to May 31, 2005 . . . . . . . . . . . 4

III. FAR Clause 52.217-8 (Option to Extend Services) Permitted The Government To Require Continued Services By Arko From April 1, 2005 to May 31, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

ABC Health Care,
VABCA No. 3462, 1992 WL 382651 (1992) . . . . . . . . . . 6-7

ABC Health Care,
VABCA No. 3462E, 1994 WL 288132 (1994) . . . . . . . . . . 7

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 3-4

Cubic Def. Sys., Inc. v. United States,
45 Fed. Cl. 450 (1999) . . . . . . . . . . 4

Freightliner Corp. v. Caldera,
225 F.3d 1361 (Fed. Cir. 2000) . . . . . . . . . . 13

JJA Consultants v. Dep't of Treasury,
GSBCA 16796-TD, 2006 WL 1918852 (2006) . . . . . . . . . . 10

Konitz Contracting, Inc.,
ASBCA No. 52299, 2001 WL 965933 (2001) . . . . . . . . . . 10

ITT Federal Services Corp. v. Widnall,
132 F.3d 1448 (Fed. Cir. 1997) . . . . . . . . . . 6

Storage Tech. Corp. v. CCL Serv. Corp.,
94 F.Supp.2d 697 (D.Md. 2000) . . . . . . . . . . 9-10

**REGULATIONS**

48 C.F.R. § 17.204 . . . . . . . . . . 13-14

48 C.F.R. § 17.208 . . . . . . . . . . 8

48 C.F.R. 37.111 . . . . . . . . . . passim

48 C.F.R. 52.217-8 . . . . . . . . . . passim

48 C.F.R. 52.217-9 . . . . . . . . . . passim

48 C.F.R. 52.237-3 . . . . . . . . . . passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARKO EXECUTIVE SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 05-1193 and 06-296 |
| | ) | (Judge Allegra) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of this Court, defendant, the United States, respectfully requests that the Court grant summary judgment in favor of the Government upon the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law as to liability, and respectfully requests that the Court deny plaintiff's motion for summary judgment as to liability. In support of this motion, we rely upon the following brief, our response to plaintiff's proposed findings of uncontroverted fact, our additional proposed findings of uncontroverted fact, and the appendix filed under separate cover.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

1. Whether FAR clause 52.237-3 (Continuity of Services) applied to the services performed by Arko Executive Services, Inc. ("Arko") during the two month period from April 1, 2005 to May 31, 2005.

2. Assuming FAR clause 52.237-3 did not apply, whether the Government could lawfully require continued services by Arko during this two month period pursuant to FAR clause 52.217-8 (Option to Extend Services).

## STATEMENT OF THE CASE

I. Nature of the Case

The dispute in this case centers upon a contract between the Government and Arko for guard services at the United States embassy in Nicosia, Cyprus. The contract provides a base year and four one-year options. The Government exercised all four options, and the last of these options was to expire on March 31, 2005. Due to a delay in the award of a successor contract, the Government was unable to award a successor contract by April 1, 2005. As a result, in March, 2005, the Government issued Modification No. 21, which unilaterally modified the contract pursuant to FAR clause 52.217-8 to require extended services by Arko for a two-month period between April 1, 2005 and May 31, 2005. Arko contested the Government's right to require extended services pursuant to 52.217-8, and contended that the Government could only exercise an option under FAR 52.237 for services provided after March 31, 2005. Arko performed the required services during this two-month period, and on January 18, 2006, Arko submitted a certified claim seeking compensation pursuant to FAR 52.237, rather than 52.217-8. The contracting officer denied this claim on March 21, 2006.

II. Statement of Facts

The relevant, uncontroverted facts are set forth in defendant's response to plaintiff's proposed findings of uncontroverted fact, and defendant's proposed findings of uncontroverted fact, filed contemporaneously with this brief.

**SUMMARY OF THE ARGUMENT**

Summary judgment should be granted in favor of the Government because there is no genuine dispute as to any material fact, and the Government is entitled to judgment as a matter of law. Contrary to Arko's contentions, FAR 52.237 did not apply to the services performed by Arko between April 1, 2005 and May 31, 2005. Instead, FAR 52.237 provides an option that may be exercised by the Government to require phase-in and phase-out services in a period of transition overlapping with the successor contract. No phase-in or phase-out services were required by the Government pursuant to the modification requiring continued services by Arko, and there was no period of overlap between the contract with Arko and the successor contract. Therefore, FAR 52.237 did not apply.

Furthermore, Arko mistakenly contends that the Government could not require continued services pursuant to FAR 52.217-8 beyond the completion of the fifth year of the contract. Contrary to this contention, the option provision contained in FAR 52.217-8 may be used to avoid the necessity of negotiating a short-term extension of the contract in circumstances, such as the circumstances in this case, when the contract is nearing completion and award of the successor contract is unforeseeably delayed. Nothing in the contract or in the FAR bars the Government from utilizing this option to require services beyond the fifth year of the contract.

**ARGUMENT**

**I. Standard Of Review**

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A genuine issue is one that "may reasonably be

resolved in favor of either party." Id. at 250. When considering cross-motions for summary judgment, the court evaluates each motion under the same standard. Cubic Def. Sys., Inc. v. United States, 45 Fed. Cl. 450, 457 (1999).

## II. FAR Clause 52.237-3 (Continuity of Services) Did Not Apply To The Services Performed By Arko From April 1, 2005 to May 31, 2005

Arko contends that the services it performed between April 1, 2005 and May 31, 2005 were governed by FAR clause 52.237-3 (Continuity of Services). Pl. Br. at 6. Arko's contention is contrary to the express language of modification No. 21, the clear and unambiguous language of clause 52.237-3, decisions by the United States Court of Appeals for the Federal Circuit and a board of contract appeals, and the undisputed facts of the case regarding the nature of the services provided by Arko and the successor contract.

First, the Government did not invoke FAR clause 52.237-3 in issuing the unilateral modification to the contract that required performance by Arko from April 1, 2005 to May 31, 2005. A89.[1] Instead, the Government explicitly invoked FAR clause 52.217-8 (Option to Extend Services) in modification No. 21. Id. Thus, modification No. 21 clearly indicates that FAR clause 52.217-8, rather than 52.237-3, applied to the services required by that modification.

Second, the clear and unambiguous language of FAR clause 52.237-3 demonstrates that 52.237-3 did not apply to the services performed during the two month period from April 1, 2005 to May 31, 2005. FAR clause 52.237-3 states, in relevant part:

> (a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without interruption and that, upon contract expiration, a successor, either

[1] "A__" refers to the appendix to defendant's response to plaintiff's proposed findings of fact and defendant's proposed findings of fact, filed concurrently with this brief.

> the Government or another contractor, may continue them. The Contractor agrees to (1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.
>
> (b) The Contractor shall, upon the Contracting Officer's written notice, (1) furnish phase-in, phase-out services for up to 90 days after this contract expires and (2) negotiate in good faith a plan with a successor to determine the nature and extent of phase-in, phase-out services required. The plan shall specify a training program and a date for transferring responsibilities for each division of work described in the plan, and shall be subject to the Contracting Officer's approval. The Contractor shall provide sufficient experienced personnel during the phase-in, phase-out period to ensure that the services called for by this contract are maintained at the required level of proficiency.
>
> * * *
>
> (d) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agreed period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract.

48 C.F.R. § 52.237-3; A50-51.

It is clear from the plain language of this clause that the clause only applies to phase-in and phase-out services and that, in order for the clause to apply, there must be a successor contractor in place for which the outgoing contractor performs the phase-in and phase-out services. Paragraph (a) indicates that, upon exercise of the option, the outgoing contractor agrees to "furnish phase-in training" and "exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor." Id. Paragraph (b) refers several times to the phase-in and phase-out services to be provided pursuant to the clause, and calls upon the outgoing contractor to "negotiate in good faith a plan with a successor to determine the nature

and extent of phase-in, phase-out services required." Id. Paragraph (d) describes the compensation to be paid for the phase-in and phase-out services called for under the clause. Id.

Furthermore, the United States Court of Appeals for the Federal Circuit has made it clear that this clause applies solely to phase-in and phase-out services:

> The purpose of the Continuity of Services clause is to facilitate the transition from one contractor to another or to the government. The original contractor is required, upon notice, to provide appropriate transition services, and to be reimbursed therefor. The term phase-in, phase-out operations means activities that assist a new contractor or the government in connection with the transition.

ITT Federal Services Corp. v. Widnall, 132 F.3d 1448, 1452 (Fed. Cir. 1997). In that case, the Federal Circuit held that severance payments were not compensable under FAR clause 52.237-3 because these payments "do not result from activities designed to assist a new contractor or the government in taking over operations, . . . are not designed to assure the continuity of services during a transition period . . . and had no role in effecting a transfer of operations." Id.

Likewise, in ABC Health Care, VABCA No. 3462, 1992 WL 382651 (1992), the board of contract appeals found:

> The Continuity of Services clause serves as a bridge between the current contractor and the successor contractor (or, where appropriate, the Government), for transitional services and to insure that vital services continue as the successor contractor begins performance. [The clause] does not serve as a mechanism to unilaterally 'extend' the existing contract on its original or renegotiated terms. For the [c]lause to apply there must be a successor contractor selected for which the transitional services are required.

Id. Consequently, the board held that FAR clause 52.237-3 did not apply during the period in question in that case because there were no phase-in or phase-out services called for, and the successor's contract did not even begin until after the cessation of performance by the outgoing

contractor. Id.; see also ABC Health Care, VABCA No. 3462E, 1994 WL 288132 (1994) (stating that the board's decision was based upon a clear reading of the clause, which "could not be used . . . to unilaterally extend a contract where no successor contractor existed, and the phase-in, phase-out services depicted by the [c]lause were not present . . . .").

As in ABC Health Care, the services to be performed during the extension period in this case were not phase-in or phase-out services. Def. Prop. Finding No. 15A; A2. Instead, the specification of services in modification No. 11 required Arko to perform the same services that it had been performing prior to April 1, 2005. Def. Prop. Finding No. 15A; A2, 5-15, 57-62, 89-92.

Furthermore, as in ABC Health Care, there was no successor contract in place until after the end of performance by the outgoing contractor. Def. Prop. Finding No. 15B; A2. Modification No. 21 was issued on March 22, 2002, and required services by Arko from April 1, 2005 through May 31, 2005. A89. The successor contract was not awarded until April 26, 2005. A2. In addition, the effective date of the contract, and the starting date for the successor's contract, was not until June 1, 2006. Id. Thus, there was no successor contract in place until after the period of performance by Arko pursuant to modification No. 21. Under these circumstances, as in ABC Health Care, FAR clause 52.237-3 could not have applied during the two-month period of continued services by Arko.

## III. FAR Clause 52.217-8 (Option to Extend Services) Permitted The Government To Require Continued Services By Arko From April 1, 2005 to May 31, 2005

Contrary to Arko's contention, FAR clause 52.217-8, Option to Extend Services, permitted the Government to extend services required by Arko from April 1, 2005 to May 31, 2005. This clause provides:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the schedule.

48 C.F.R. § 52.217-8; A48 (incorporating by reference 52.217-8).

Section 37.111 of the FAR explains the purpose of this clause:

> Award of contracts for recurring and continuing service requirements are often delayed due to circumstances beyond the control of contracting offices. Examples of circumstances causing such delays are bid protests and alleged mistakes in bid. In order to avoid negotiation of short extensions of existing contracts, the contracting officer may include an option clause (see 17.208(f)) in solicitations and contracts which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract.

48 C.F.R. § 37.111; see also 48 C.F.R. § 17.208 (prescribing the inclusion of FAR clause 52.217-8).

The Government appropriately invoked FAR 52.217-8 in requiring continued services by Arko from April 1, 2005 to May 31, 2005. A89. In March, 2005, it became apparent to the Department of State that it would be unable to award a successor contract by April 1, 2005. A1-2. Therefore, in accordance with FAR 52.217-8, the Government issued modification No. 21 which required continued services by Arko through May 31, 2005. A89.

Furthermore, contrary to Arko's contention, modification No. 21 did not violate FAR clause 52.217-9. Pl. Br. at 7. This clause, Option to Extend the Term of the Contract, incorporated by a full text deviation in the contract, provides:

> (a) The Government may extend the term of this contract by written notice to the Contractor within the performance period of the contract or within 30 days after funds for the option year become available, whichever is later.
> (b) If the Government exercises this option, the extended contract shall be considered to include this option provision.
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed five years.

A50.[2]

Arko relies upon the five year limitation stated in paragraph (c) to contend that the Government could not extend the services required by Arko beyond March 31, 2005, because the contract had been in effect for five years on that date. Pl. Br. at 7. Thus, Arko reasons that the Government's extension of services for two months starting April 1, 2005 violated paragraph (c) of clause 52.217-9, and also violated FAR 52.217-8, because the extension was not "within the limits and at the rates specified in the contract." Pl. Br. at 7-8.

Arko's contention that 52.217-8 cannot be used to extend services beyond the period specified in 52.217-9 has been rejected by every court and board that has considered the issue. For example, Arko's contention was rejected in Storage Tech. Corp. v. CCL Serv. Corp., 94 F.Supp.2d 697 (D.Md. 2000). In that case, the service contract with the Government provided for a one year base period and four option years. Id. at 688-89. The contract also contained FAR clause 52.217-9, which stated that the "total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months." Id. at 689. The Government exercised all four options, and the last day of performance under the fourth option year was

[2] FAR 52.217-9 leaves the maximum period described in paragraph (c) of the clause to be specified in the contract. 48 C.F.R. § 52.217-9 ("The total duration of this contract, including the exercise of any options under this clause, shall not exceed _____ (months) (years)."). As a result, the maximum period described in paragraph (c) varies by contract.

December 31, 1998. Id. at 688-89. Due to a bid protest challenging the solicitation of the successor contract, on December 23, 1998 the Government issued a modification extending services under the contract starting January 1, 1999. Id. at 700.

The central dispute in that case turned upon whether services could be extended pursuant to clause 52.217-8 beyond the five year period described in 52.217-9. Id. at 700-02. The Court concluded that such services could be extended beyond the five year period described in 52.217-9. Id. at 701. "When read in conjunction with the purpose and language of 52.217-8, the contract duration stated in 52.217-9 clearly does not include any extensions possible under 52.217-8." Id.

At least two boards of contract appeals have reached the same conclusion. For example, in Konitz Contracting, Inc., ASBCA No. 52299, 2001 WL 965933 (2001), the service contract provided for a base year and a one year option. Id. The contract also contained a 52.217-9 clause, which provided that the "total duration of the contract, including the exercise of any options under this clause, shall not exceed two years." Id. The Government exercised the single option year, which was to expire on April 11, 1997. Id.

Starting March 20, 1997, the Government issued several modifications pursuant to 52.217-8 requiring continued services beyond the period described in 52.217-9. Id. The contractor contended that these unilateral extensions breached the contract because they exceeded the period described in 52.217-9. Id. The board rejected that contention, stating, "[T]he limitation of the contract term by the FAR 52.217-9 clause does not preclude extensions beyond such term under the FAR 52.217-8." Id.

Likewise, in JJA Consultants v. Dep't of Treasury, GSBCA 16796-TD, 2006 WL 1918852 (2006), the contract provided for a base year plus four one-year options. Id. The Government exercised all four options, extending the term of the contract to March 31, 2003. Id. The Government also issued a modification extending performance for an additional six months, through September 30, 2003. Id. Sua sponte, the Court raised the question whether the Government could extend performance beyond five years, but concluded that the five year period did not provide an impediment to the six month extension through September 30, 2003:

> Neither party explains how the contract's duration could have been extended to September 30, 2003. The explanation is contained in the contract, which provided that although the total duration of the contract, including the exercise of options, was not to exceed five years, [the Government] had an option to extend [the contractor's] performance for an additional six months.

Id. at n.2.

The decisions of the United States District Court for the District of Maryland and the boards of contract appeal are consistent with the express language of the two clauses and the underlying purpose of 52.217-8. Clause 52.217-9 provides in part that the "total duration of this contract, including the exercise of any options under this clause, shall not exceed five years." A__ (emphasis added). The 52.217-8 option is not an option exercised under 52.217-9. Rather, 52.217-8 has its own provisions regarding the manner for exercising that option, for example a different notice provision from the notice provision stated in 52.217-9. Compare FAR 52.217-8 ("The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the schedule) with clause 52.217-9 ("The Government may extend the term of this contract by written notice to the Contractor within the performance period of the contract or within 30 days after funds for the option year become available, whichever is later.").

Furthermore, the purpose of the 52.217-8 clause is to permit the Government to meet continuing service requirements through a short extension without having to renegotiate when the award of a successor contract is delayed. 48 C.F.R. 37.111. This purpose would not be served if the contract were interpreted in a way that prevented the Government from using 52.217-8 when, as in this case, the contract is otherwise expiring and there is no successor contract in place due to a delay in award.

Moreover, Arko's contention that the Government could unilaterally extend services beyond the period described in 52.217-9 is belied by its contention that the Government's exercise of an option for the period after the fifth year of the contract should have been pursuant to 52.237-3, Continuity of Services. By contending that the Government's exercise of an option should have been pursuant to 52.237-3, Arko concedes that the Government could require services after the fifth year of the contract, notwithstanding the five year limitation in 52.217-9. Essentially, Arko agrees with the Government that the Government could unilaterally require services beyond five years, but disagrees with the Government's exercise of an option under 52.217-8, rather than 52.237-3, in extending services beyond five years.

As described in section I of the argument above, 52.237-3 would not have been an appropriate provision for extending services starting April 1, 2005 because no phase-in or phase-out services were required by the Government during the extension period, and the successor contract did not even begin until after the completion of the services provided by Arko during the two-month extension. Furthermore, and more to the point regarding Arko's contention with respect to 52.217-9, Arko fails to demonstrate why it is not possible to extend services beyond

five years pursuant to 52.217-8, when it is possible to extend services beyond five years pursuant to 52.237-3.[3]

Arko also contends that the use of clause 52.217-8 to extend services beyond five years violates FAR 17.204. Pl. Br. at 9. This provision provides, in part, "Unless otherwise approved in accordance with agency procedures, the total of the basic and option periods shall not exceed 5 years in the case of services, and the total of the basic and option quantities shall not exceed the requirement for 5 years in the case of supplies." 48 C.F.R. § 17.204(e).

As an initial matter, Arko cannot assert a cause of action for any alleged violation of this regulation because this regulation does not exist for the benefit of private contractors. In order for a private contractor to bring suit against the Government for violation of a regulation, that regulation must exist for the benefit of the private contractor. Freightliner Corp. v. Caldera, 225 F.3d 1361, 1365 (Fed. Cir. 2000). In contrast, if the regulation exists for the benefit of the Government, then the private contractor does not have a cause of action against the Government in the event that a contracting officer fails to comply with the regulation. Id. In Freightliner Corp., the contractor alleged that the Government violated Defense Acquisition Regulation § 1-1502(e), similar to FAR 17.204, which provided that "the total of the basic and option quantities . . . shall not exceed the requirement for five years in the case of supplies." Id. at

[3] To the extent that Arko may rely upon the language in 52.217-8 that the exercise of the option is to be "within the limits and at the rates specified in the contract," such reliance is misplaced. First, 52.217-8 includes its own temporal limitation (total extension not to exceed six months), therefore the clause should not be interpreted as incorporating by reference temporal limitations found in other clauses. Furthermore, even the reference to limits in the contract could apply to temporal limitations found elsewhere, Arko has not demonstrated that another provision in the contract bars the exercise of all options beyond five years, including options pursuant to 52.217-8.

1366. The Court held that this regulation did not exist for the benefit of the contractor, and therefore the contractor could not assert a cause of action for violation of that regulation. Id. at 1366, 68.

Even if Arko could assert a cause of action for an alleged violation of FAR 17.204, the Government did not violate that regulation. Arko's contention that the Government violated 17.204, like its contention that the Government breached 52.217-9, is belied by Arko's recognition that the Government could permissibly extend services beyond five years pursuant to 52.237. By recognizing that the Government could extend services beyond five years pursuant to 52.237, Arko concedes that all services pursuant to the Contract do not need to be completed within five years, notwithstanding FAR 17.204. Arko fails to explain why the exercise of an option pursuant to 52.217-8 beyond five years would violate FAR 17.204, when the exercise of an option pursuant to 52.237-3 beyond five years does not.

Moreover, FAR 17.204 must be read in conjunction with FAR 37.111, Extension of Services, which authorizes the inclusion of a clause substantially similar to 52.217-8 to address unforseen delays in the award of a successor contract. FAR 37.111 demonstrates that the purpose of the 52.217-8 clause is to permit the Government to meet continuing service requirements through a short extension without having to renegotiate when the award of a successor contract is delayed. This purpose would not be served if the Government were unable to use 52.217-8 when the Government is most likely to need this option – the point at which the contract would otherwise expire.

**CONCLUSION**

There are no genuine disputes of material fact, and, as a matter of law, the Government was permitted to exercise its option under FAR 52.217-8 to require extended services by Arko from April 1, 2005 through May 31, 2005. Therefore, we respectfully request that the Court grant the Government's motion for summary judgment as to liability, and deny Arko's motion for summary judgment as to liability.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530
Telephone: (202) 353-0536
Facsimile: (202) 305-7643

October 2, 2006

Attorneys for Defendant