**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ARKO EXECUTIVE SERVICES, INC.** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-1193C; 06-0296C** |
| | ) | **(Judge Allegra)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE (i) TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND (ii) TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

MICHAEL J. SHEA
Lewis S. Wiener
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2415
Phone: (202) 383-0161
Fax: (202) 637-3593

Attorneys for Plaintiff

Dated October 19, 2006

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Summary of Argument | 1 |
| Government Is Barred by the Contract and FAR from Using FAR Clause 52.217-8 | 2 |
| Applicable Requirements of the Contract | 2 |
| Applicable FAR Requirements | 6 |
| FAR Clause 52.237-3 Continuity of Services Is Applicable | 7 |
| Conclusion | 13 |

# TABLE OF AUTHORITIES

**CASES** **PAGE**

JJA Consultants v. Dept. of Treasury, ........................................................ 5
GSBCA 16796-TD, 2006 WL 1918852 (2006)

Konitz Contracting, Inc.,....................................................................... 5
ASBCA No. 52299, 2001 WL 965933 (2001)

ITT Federal Services corp. v. Widnall, ........................................................ 12
132 F.3d 1448 (Fed. Cir. 1997)

Storage Tech. Corp. v. CCL Serv. Corp., ..................................................... 5
94 F.Supp. 2d 697 (D.Md. 2000)

**OTHER**

Restatement Second, Contracts, Section 203(a) .......................................... 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARKO EXECUTIVE SERVICES, INC.<br>Plaintiff, | ) | |
| v. | ) | No. 05-1193C; 06-0296C<br>(Judge Allegra) |
| THE UNITED STATES,<br>Defendant. | ) | |

**PLAINTIFF'S RESPONSE (i) TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND (ii) TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PLAINTIFF'S BRIEF**

Summary of Argument: Defendant concludes its Summary of the Argument, Defendant's Brief, p.2, by stating "Nothing in the contract or in the FAR bars the Government from utilizing this option [i.e., FAR clause 52.217-8 Option to Extend Services] to require services beyond the fifth year of the contract."

Plaintiff strongly disputes such statement and asserts that provisions of both Contract No. S-CY600-00-C-0006 (Contract) and the FAR bar the Government from exercising the option at FAR 52.217-8 to extend "the contractual period, beginning from April 1, 2005 through to May 31, 2005." (See Modification No. 21, date signed, March 22, 2005. A89)

In short, Plaintiff respectfully submits that both the contract and the FAR require that the Court find that Defendant is not entitled at law to summary judgment on its motion with respect to use of FAR clause 52.217-8 to extend the performance period of the contract beyond a total duration of five years. Plaintiff further respectfully requests the Court, for the reasons stated

hereinafter and in its other submissions to the Court, to grant summary judgment entitling Plaintiff to relief in accordance with FAR clause 52.237-3 Continuity of Services.

## I. Government Is Barred by the Contract and FAR from Using FAR Clause 52.217-8 to Extend the Contract Beyond its the March 31, 2005 Expiration Date:

A. Applicable Requirements of the Contract: Use of FAR clause 52.217-8 to extend the Contract term for two months beyond the March 31, 2005 expiration of the five-year total duration of the Contract is contrary to the requirements of the following provisions of the Contract (i) clause F.4 Period of Performance; (ii) FAR clause 52-217-9 Option to Extend the Term of the Contract (Deviation); and (iii) FAR clause 52.217-8 Option to Extend Services of the Contract.

i) Clause F.4 Period of Performance provides:

> "F.4.1 The performance period of this contract is from the date of Notice to Proceed and continuing for 12 months, with four, one-year options to renew. The initial period of performance includes any transition period authorized under the contract.
>
> F.4.2. The Government may extend this contract in accordance with the option clause at Subsection I.1.2, FAR Clauses Incorporated by Full Text (FAR 52.217-9, Option to Extend the Term of the Contract (Deviation), which also specifies the total duration of this contract.
>
> F.4.3 The Government may exercise the option set forth at Subsection I.1.1, "FAR 52.217-8, Option to Extend Services", within the currently ongoing period of performance or within 30 days after funds for the option become available, whichever is later."

F.4.1 states that the performance period of the contract is from the date of Notice to Proceed and continuing for 12 months, with four, one-year options. In short, the period of performance of this Contract is defined by F.4.1 to be up to five years.

F.4.2 states that the Government may extend the term of this Contract in accordance with the option clause at Subsection 1.1.2, FAR Clauses Incorporated by Full Text (52.217-9, Option to Extend the Term of the Contract (Deviation), and makes the point that that clause 52.217-9 specifies the total duration of this Contract (i.e., the total duration of this contract shall not exceed five years).

F.4.3 states that the Government may exercise the Option to Extend Services at FAR 52.217-8 within the ongoing period of performance or within 30 days after funds for the option become available, whichever is later. FAR 52.217-8 severely restricts when the option may be used. Unlike F.4.2, F.4.3 does not authorize use of FAR 52.217-8 to extend the term of the Contract. If FAR 52.217-8 was intended to be able to extend the performance period, F.4.3 would have been worded in a way to put the parties on notice of that power. Absent such express authorization in F.4.3, FAR 52.217-8 should not be used to extend the total duration of five years of this Contract.

ii) FAR clause 52.217-9 Option to Extend the Term of the Contract (Deviation) provides:

> (a) The Government may extend the term of this contract by written notice to the contractor within the performance period of the contract or within 30 days after funds for the option year become available, whichever is later.
>
> (b) If the Government exercises this option, the extended contract shall be considered to include this option provision.
>
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed five years.

FAR clause 52.219-7 expressly provides that the total duration of this Contract, including the exercise of any options under this clause, shall not exceed five years. Any attempt to exercise an option under this clause (or under FAR clause 52.219-8) to extend the term of this

Contract beyond five years would clearly be in breach of the requirement that the total duration of the contract shall not exceed five years (as well as in breach of Section F.4.2 Period of Performance).

(iii) FAR clause 52.217-8 Option to Extend Services provides:

> "The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within the period specified in the schedule."

The authority granted by this clause is very restrictive. The Government may require continued performance of any services only <u>within the limits and at the rates specified in the contract</u>. The clear requirement is that any exercise of 52.217-8 must be within the limits specified in the contract and at the rates specified in the contract. The attempted two month extension of the contract period "ordered" by Modification No. 21 met neither of these requirements.

Any attempt to argue that the March 22, 2005 attempted exercise of FAR 217-8 overrode and preempted (i) the language of F.4.1 that the performance period of the Contract is "12 months from notice to proceed with four, one-year options" and (ii) the language of 52.217-9(c) that "the total duration of the contract shall not exceed five years (which provision, per F.4.2, "specifies the total duration of the contract"), must fail. This language cannot be made ineffective or meaningless. Any attempt to emasculate 52.219-9(c) is particularly wrongful since FAR section 17.204(a) specifically requires that the contract "specify limits on ... the overall duration of the contract, including any extension." FAR 52.219-9(c) should not be rendered

ineffective. A cardinal rule of contract interpretation is that an interpretation will generally be rejected if it leaves portions of the contract language meaningless, useless, ineffective, or superfluous. See Restatement Second, Contracts §203(a).

Not Within the Limits: Both the contract and the FAR specified a "limit" on the total duration of the contract, i.e., not to exceed five years. FAR clause 52.217(9)(c) of the Contract specifies that the total duration of the Contract shall not exceed five years. Section F.4 of the Contract similarly defines the performance period of the Contract as being up to five years. FAR provisions 17.204(a) and 17.204(e) which will be discussed shortly require, in reverse order, that "the total of the basic and option periods shall not exceed five years in the case of services" and that the contract "shall specify limits on ... the overall duration of the contract, including any extension." Contracting Officers are to be expected to give effect to these limitations when deciding whether to extend the performance period of a contract.[1]

Not at Rates Specified in the Contract. The contract contained 14 pages of pricing information. There was separate pricing for the base year and for each of the four option years. The prices quoted for each year specified that these prices were applicable only during that year. The Government may not apply prices specified by ARKO to be used for performance of work by Arko in the period April 1, 2004 to March 31, 2005 to be applied to work to be performed by Arko in April and May 2005. The page appended to Modification No. 21 that sets forth the rates

---

[1] The Government cites a District Court of Maryland decision and a decision of the Armed Services Board of Contract Appeals and of the General Services Administration Board of Contract Appeals [namely, respectively, Storage Tech. Corp. v. CCL Serv. Corp., 94 F. Supp. 2d 697 (D. Md. 2000); Konitz Contracting, Inc., ASBCA No. 52299, 2001 WL 965933 (2002), and JJA Consultants v. Dept. of Treasury, GSBCA 16796-TD, 2006 WL 1918852 (2006)] in support of the contention that the limitation of the contract term by FAR 52.217-9 clause does not preclude extension beyond such term under FAR 52.217-8. Plaintiff responds that the facts in this case distinguish Plaintiff's claim from the facts in these other matters. There is no reference to clause 52.237-3 in any of those other matters. Clause 52.237-3 governs here. Furthermore, Plaintiff asserts that the analysis in these three matters is flawed and the decisions are flawed. Our research indicates that there has been no reliance upon the decisions in those matters. See Plaintiff's Appendix (PA), being filed this date, at pages 7 through 12.

and pricing to be applicable in April and May 2005 (A62) is the result of a unilateral "adjustment" made by the Government to the mutually agreed prices specified by Arko to be applicable during the period April 1, 2004 to March 31, 2005 (A62). (Additionally, FAR clause 52.217-8 required that rates "may be adjusted" only as a result of revisions to prevailing labor rates provided by the Secretary of Labor, and this condition can never be met with respect to this contract for the Embassy. There accordingly can be no adjustment.)

B. Applicable FAR Requirements: Use of FAR clause 52.217-8 to extend the total duration of the Contract for two months beyond March 31, 2005 is contrary to the requirements of both (1) FAR sections 17.204(a) and (ii) FAR section 17.204(e).

(i) FAR section 17.204(a) provides:

> "The contract shall specify limits on ... the overall duration of the term of the contract, including any extension."

The provision of the Contract at 52.217-9(c) that states "The total duration of this contract, including the exercise of any options under this clause, shall not exceed five years" is clearly in response to, and incompliance with, FAR 17.204(a). (Significantly, section F.4.2 of the Contract states that FAR 217-9 "specifies the total duration of the contract.")

(ii) FAR Section 17.204(e) provides:

> " ... the total of the basic and option periods shall not exceed five years in the case of services ..."

Exercise of the 52.217-8 option would extend the contractual period for two additional months beyond March 31, 2005, and results in the total of the basic (i.e., one year) and option (four years, two months) periods being five years and two months and in a violation of FAR 17.204(e) (and a violation of law since the FAR have the force and effect of law).

**II. FAR Clause 52.237-3 (Continuity of Services) Is Applicable to the Services Performed by Arko from April 1, 2005 to May 31, 2005.**

Section H Special Contract Requirements of the Contract provides:

> "H.11 Continuity of Services.
>
> The Contractor shall comply with Section I.1.2, FAR clause 52.237-3 during any transition period."

FAR Clause 52.237-3 Continuity of Services provides:

> (a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without interruption and that, upon contract expiration, a successor, either the Government or another contractor, may continue them. The Contractor agrees to (1) furnish phase-in, phase-out services for up to 90 days after this contract expires and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.
>
> (b) The Contractor shall, upon the Contracting Officer's written notice, (1) furnish phase-in, phase-out services for up to 90 days after this contract expires and (2) negotiate in good faith a plan with a successor to determine the nature and extent of phase-in, phase-out services required. The plan shall specify a training program and a date for transferring responsibilities for each division of work described in the plan, and shall be subject to the Contracting Officer's approval. The Contractor shall provide sufficient experienced personnel during the phase-in, phase-out period to ensure that the services called for by this contract are maintained at the required level of proficiency.
>
> (c) The Contractor shall allow as many personnel as practicable to remain on the job to help the successor maintain the continuity and consistency of the services required by this contract. The Contractor also shall disclose necessary personnel records and allow the successor to conduct on-site interviews with these employees. If selected employees are agreeable to the change, the Contractor shall release them at a mutually agreeable date and negotiate transfer of their earned fringe benefits to the successor.
>
> (d) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agreed period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract. (Emphasis supplied).

March 31, 2005 was the date on which the total duration of the contract reached five years and the contract expired. The period March 1, 2005 to April 30, 2005 was, as discussed below, a transition period..

Defendant undertook to contract long term for services for the period subsequent to March 31, 2005 for the United States Embassy Nicosia notwithstanding that Plaintiff had satisfactorily performed the work called for by the Contract during its five-year duration. Plaintiff chose not to compete for a successor contract.

Plaintiff's Executive Vice President/Chief Financial Officer inquired on February 8, 2005 whether post contract services of Plaintiff would be needed by the Embassy, and in response to a follow up February 15, 2005 inquiry from Plaintiff, the Contracting Officer advised that no post contract services would be required. Arko proceeded on or about February 28, 2005 to give the employees and the local government the required notice that employment with Arko would end on March 31, 2005. A March 7, 2005 email from Plaintiff's Executive Vice President/Chief Financial Officer to the Contracting Officer stated:

> "On February 8, 2005, by letter dated February 7, 2005 to you from me, you were asked whether the Embassy would require Arko services beyond the March 31st expiration date. A reply was requested by February 15th. Notices to employees and the government regarding loss of employment that are required by Cyprus law on pain of significant liability necessitated prompt notification of Embassy requirements. You did not respond by February 15th. I sent you another email on February 15th indicating the Company presumed that your lack of response meant that no post contract services would be required and that Arko would move forward with the employee and government notices. You responded to the email and said that the Company was correct that the Embassy did not anticipate the need for post contract services. Arko proceeded to give the employees and government notice that employment with Arko would end on March 31, 2005. The notices were transmitted on or about February 28th. On March 4, 2005 at 2:00 pm you presented to our local agent Mr. Douglas Duncan a contract modification for a 1 month contract extension…"

On March 4, 2005, at 2:00 pm, the Contracting Officer tendered to Douglas Duncan, Plaintiff's Project Manager in Cyprus, Modification No. 21 to the Contract, containing a unilateral directive to Plaintiff to extend "the contractual period, beginning April 1, 2005, through April 30, 2005." This document cited FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) as its authority. It also set forth prices for the work to be performed, which prices were not specified in the Contract nor adequate in amount in view of the circumstances. Because Plaintiff questioned and disputed the Contracting Officer's interpretation of the Contract and his authority to exercise FAR 52.217-8, Plaintiff viewed it necessary to engage counsel.

Plaintiff, through its attorney and its personnel, advised the Contracting Officer that FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) did not provide authority for the Contracting Officer to order extension of the contractual period beyond its March 31 expiration, but that the FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) clause of the Contract did provide authority for Plaintiff to provide transitional post contract services desired and needed by the Government. Plaintiff further advised that Plaintiff (i) would, under protest, provide the services desired by the Government; and (ii) that Plaintiff would seek compensation under FAR 52.237-3 CONTINUITY OF SERVICES for such post contract phase-out services.

Actions of Defendants' personnel in February 2005 and subsequently interfered with and increased materially the difficulties that Plaintiff encountered in performing the work of providing guard services in the post-contract period and increased significantly the costs incurred by Plaintiff. In mid-February 2005, the Government advised that such services would not be necessary. FAR section 37.111 which explains the purpose of the option at FAR 52.217-8, speaks of delays due to circumstances beyond the control of contracting offices, mentioning

circumstances causing such delays as bid protests and alleged mistakes in bid. It is our understanding that there was no bid protest involved here: Plaintiff does not have knowledge as to what caused the Government delay in having a successor to Arko on the job as of April 1, 2005.

On March 18, 2005, the Contracting Officer sent an email letter to Mr. Oringer, Plaintiff's Executive Vice President and CFO, which letter makes it perfectly clear that the services being rendered were to facilitate the transition to the new contractor, stating in part:

> …"In addition, fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow enough time for the new contractor to be fully operational and will avoid having to extend later on . I have no intention of making any additional extensions under this clause.
>
> Arko is therefore required to provide performance for the period of April 1, 2005 through May 31, 2005 in accordance with Modification 21 as amended.
>
> If Arko wishes to pursue this matter as a dispute, please "comply with the procedures set forth in FAR Subpart 33.2 Disputes and Appeals." (PA, pages 1 and 2)

ARKO regarded the exercise of FAR clause 52.217-8 in Modification No. 21 (See PA, pages 3 through 6) to be in violation and in breach of the Contract, and also in violation of FAR 17.204(e) (and since FAR have the force and effect of law, additionally to be in violation of law), and accordingly viewed Modification No. 21 as being void. At the same time, Arko recognized that FAR clause 52.237-3 Continuity of Services of the Contract was applicable in the circumstances present.

Section H.11 of the Contract requires that "the Contractor shall comply with … FAR 52.237-3 during any transition period." Arko recognized and agreed that the

services that the Government sought to have continued were "vital to the Government and must be continued without interruption." See FAR clause 52.237-3(a) Arko also agreed and undertook during this two month period "to exercise its best efforts and cooperation to effect an efficient transition to a successor". See FAR clause 52.237-3(a).

Arko viewed the order directing Arko to provide services to the Government in April and May 2005, as set forth in Modification No. 21, to be constructively an order by the Contracting Officer directing Arko to provide phase-out services. Modification No. 21 was viewed to be a constructive order to Arko to perform post-contract services pursuant to FAR clause 52.237-3. The initial and revised Modification No. 21 constituted the Contracting Officer's written notices to Arko to furnish phase-out services for up to 61 days after the Contract expired, in accordance with FAR clause 52.237(b)(1).

The Contracting officer did not call for Arko to furnish phase-in services or to negotiate a plan with a successor contractor per FAR 52.237-3(b)(2). While Arko was ready, willing and able to comply with FAR 52.237-3(c), the Government never requested Arko to undertake such additional activities in connection with the transition.

Arko submitted its claim for reimbursement of the costs of performing its phase-out services and fee for its work during the post-contract phase in accordance with FAR 52.237-3(d), but its entitlement to payment was denied by the Contracting Officer on the basis that the services were rendered pursuant to the exercise of FAR clause 52.217-8, which clause does not permit Arko to be reimbursed for costs in the amounts incurred by Arko in the post-contract period (during which period it was extremely difficult and

costly to maintain personnel who had no prospects of continued employment and during which other seriously increased costs were incurred).

Defendant's Brief, p.8, asserts that FAR 52.237-3 "applies solely to phase-in and phase-out services", citing ITT Federal Services Corp. v. Widnall, 132 F.3d 1448, 1452 (Fed. Dir. 1997):

> The purpose of the Continuity of Services clause is to facilitate the transition from one contractor to another or to the government. The original contractor is required, upon notice, to provide appropriate transition services, and to be reimbursed therefor. The term phase-in, phase-out operations means activities that assist a new contractor or the government in connection with the transition.

This language describes exactly what occurred at the Embassy in Cyprus. The work of Arko in April and May 2005 was solely to facilitate the transition from Arko to another contractor or to the Government. Arko was required by the Government to provide appropriate transition services and is to be reimbursed therefore. Arko rendered phase-out operations that assisted the Government in connection with the transition. From June 1, 2005 to date, it is Arko's understanding, that the guard services formerly rendered by Arko were and are being rendered by Group-4.

The Government incorrectly states in Defendant's Brief, p.2 and elsewhere, that FAR 52.237-3 provides an option that may be exercised by the Government to require phase-in and phase-out services. At p.8, the Government states that "Arko fails to explain why the exercise of an option pursuant to 52.21708 beyond five years would violate FAR 17.204, when the exercise of an option pursuant to 52.237-3 beyond five years does not."

The work performed under 52.237-3 is not performed pursuant to an option. The work is being performed pursuant to Clause H.11 Continuity of Services of the Contract. The work is performed subsequent to the expiration of the contract and consists of post-contract services to assist and facilitate the Government's transition to either the Government or a contractor or a Government/contractor combination.

FAR 52.237-3 recognizes that FAR 52.217-8 cannot be used to extend the duration of a contract beyond the maximum five year duration of an options contract. The services rendered after the contract expiration date are "post-contract services" and are to be compensated in accordance with FAR 52.237-3(d).

## CONCLUSION

Wherefore, Plaintiff respectfully requests that its Motion for Summary Judgment be granted and that the Government's Motion for Summary Judgment be denied.

Respectfully submitted,

*<u>/s/ MICHAEL J. SHEA</u>*
MICHAEL J. SHEA
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2415
Phone: (202) 383-0161
Fax: (202) 637-3593
Attorneys for Plaintiff

Of Counsel:
Lewis S. Wiener
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2415
Phone: (202) 383-0140
Fax: (202) 637-3593

Dated this 19th day of October, 2006