**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ARKO EXECUTIVE SERVICES, INC., Plaintiff, v. UNITED STATES, Defendant. | Nos. 05-1193 and 06-296 (Judge Allegra) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT AND DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this response to the proposed findings of uncontroverted fact submitted by plaintiff, Arko Executive Services, Inc. ("ARKO"), and defendant's proposed findings of uncontroverted fact.

**Plaintiff's Proposed Finding No. 1:**

Contract No. S-CY-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 includes FAR clause 52.237[-3] CONTINUITY OF SERVICES (JAN 1991) at pages 47-48.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 2:**

FAR clause 52.237[-3] CONTINUITY OF SERVICE (JAN 1991) of the Contract states at subparagraphs (a) and (d):

> CONTINUITY OF SERVICES (JAN 1991)
>
> (a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without

> interruption and that, upon contract expiration, a successor, either the Government or another contractor, may continue them. The Contract[or] agrees to (1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.
>
> * * *
>
> (d) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agree period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract. (Emphasis supplied)

**Response:**

Not in dispute, except to the extent that Arko has added emphasis (underscoring) to certain portions of the clause.

**Plaintiffs Proposed Finding No. 3:**

The Contract contained 14 pages of very detailed pricing provisions. Prices are specified at pp. 5-9 for the Base Year, April 01, 2000 - March 31, 2001; at page 9 for the First Option Year, April 01, 2001 - March 31, 2002; at pp. 10-13 for the Second Option Year, April 1, 2002 - March 31, 2003; at pp. 14-15 for the Third Option Year, April 1, 2003 - March 31, 2004; and at pp. 16-17 for the Fourth Option Year, April 1, 2004 - March 31, 2005, for each of many different Labor Categories for Standard Services as well as for Additional or Emergency Services, for Vehicles and for Reimbursable Materials. The total ceiling price for the base period and for each of the four option years is set forth on page 18. No rates were contained or specified by the contract for guard services rendered after March 31, 2005.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 4:**

The Government solicited and awarded Contract No. S-CY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 on the basis that the total duration of the contract shall not exceed five years (i.e., the contract duration shall not extend beyond March 31, 2005).

**Response:**

It is unclear what Arko means by the statement that the Government solicited and awarded the contract "on the basis that" the total duration of the contract shall not exceed five years. In any event, there is no dispute that the contract provided for a base year and four one-year options that could be exercised pursuant to clause 52.217-9. However, there are at least two other option provisions in the contract that allow the Government to require services by the awardee beyond the base year and four one-year options: FAR clause 52.237 and FAR clause 52.217-8 (incorporated by reference in the contract). A48, 50.[1]

**Plaintiffs Response to Defendant's Response:**

Defendant's statement in the second sentence that FAR clause 52.237-3 is one of at least two option provisions in the contract that allow the Government to require services by the awardee beyond the base year and four one year options is not correct. FAR clause 52.237-3 is not an option provision. Per section H.11 Continuity of Services of the Contract, the Contractor shall comply with FAR clause 52.237-3 during any transition period. The work performed by Arko during the period April 1, 2005 through May 31, 2005 was during a transition period.

**Plaintiff's Proposed Finding No. 5:**

March 31, 2005 was the date on which the total duration of the contract reached five years.

**Response:**

---

[1] "A _" refers to the attached appendix.

Not in dispute.

**Plaintiffs Proposed Finding No. 6:**

For the period subsequent to March 31, 2005, Defendant undertook to contract with a company other than Plaintiff to provide guard services for the United States Embassy Nicosia.

**Response:**

Proposed finding number 6 is incorrect to the extent it suggests that the Government awarded a contract to another company with a start date of April 1, 2005. Proposed finding number 6 is correct to the extent that it suggests that the Government issued a solicitation and attempted to award a contract to provide guard services for the United States Embassy Nicosia starting April 1, 2005.

*Defendant's* **Proposed Finding No. 6A:**

The Department of State issued the solicitation for contract S-CY600-05-C-0111, the successor contract to S-CY-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, on November 10, 2004, with an anticipated start date of April 1, 2005. Al. There were two timely offers in response to the solicitation. Id. Arko was not one of the two offerors. Id.

*Defendant's* **Proposed Finding No. 6B:**

Due to a delay in the procurement process, the Department of State was unable to award contract S-CY600-05-C-0111 by April 1, 2005. Id.

**Plaintiff s Proposed Finding No. 7:**

By letter dated February 7, 2005 from Plaintiff's Executive Vice President / CFO to the Contracting Officer, the Plaintiffs Executive Vice President / CFO asked whether the Embassy would require services "beyond the March 31,2005 expiration date of the contract." A reply was requested by February 15 since notices to employees and the local government regarding loss of employment are required by Cyprus law on pain of significant liability.

**Response:**

The first sentence of plaintiff's proposed finding No. 7 is not in dispute. As to the second sentence, there is no dispute that plaintiff's letter dated February 7, 2005 requested a response by February 15. As to plaintiff suggestion that notices to employees and the local government regarding loss of employment were required by Cyprus law by February 15, 2005, Arko provides no support for this assertion.

**Plaintiffs Proposed Finding No. 8:**

8. The Contracting Officer did not respond by February 15, and Plaintiff's Executive Vice President sent another email on February 15th indicating the company presumed that the Contracting Officer's lack of response meant no post contract services would be required and that Arko would move forward with the employee and government notices.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 9:**

The Contracting Officer responded to the email advising that the company was correct that the Embassy did not anticipate the need for post contract services. Arko proceeded to give the employees and government notices. The notices were transmitted on or about February 28th.

**Response:**

The first sentence is not in dispute. The Government has no knowledge as to the second and third sentences.

**Plaintiffs Proposed Finding No. 10:**

On March 4, 2005, the Contracting Officer tendered to Plaintiff's Project Manager in Cyprus Modification No. 21 to the Contract purporting to extend the contractual period for 30 days, from April 1 to April 30, 2005. This document cited FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) as the Contracting Officer's authority for issuance of this unilateral directive. A page setting forth prices for the work to be performed during the period April 1, 2005 to April 30, 2005 was appended to Modification No. 21, as well as a page providing information as to funding for the work.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 11:**

Plaintiff, through its attorney, advised the Contracting Officer by letter sent by email on March 14,2005, that FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) did not provide the Contracting Officer authority to issue Modification No. 21, but that FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) did provide authority for Plaintiff to provide the services vitally needed subsequent to the March 31, 2005 expiration of the Contract in connection with the transition to the new contractor.

**Response:**

Not in dispute, except to the extent that Arko's use of the word "advised" suggests that plaintiff's attorney was stating a fact, rather than an incorrect legal opinion.

**Plaintiffs Proposed Finding No. 12:**

The Contracting Officer responded in his final decision letter dated March 18, 2005, that he respectfully disagreed with the interpretation stated by Arko's attorney and advised that "Arko is therefore required to provide performance" of guard services not only during April 2005 but also during May 2005, stating:

> In addition, fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow enough time for the new contractor to be fully operational and will avoid having to extend later on.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 13:**

Plaintiff, through its attorney and its personnel, advised the Contracting Officer that FAR 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) did not provide authority for the issuance of Modification No. 21 (i.e., such clause did not provide authority for the Contracting Officer to order extension of the duration of the contract beyond five years and to order Plaintiff to provide services in April 2005), but that FAR 52.237-3 CONTINUITY OF SERVICES (JAN 1991) did provide authority for Plaintiff to provide services subsequent to March 31, 2005, during the period of transition to the new contractor.

**Response:**

Not in dispute, except to the extent that Arko's use of the word "advised" suggests that plaintiff's attorney and any other "personnel" were stating facts, rather than an incorrect legal opinion, and except to the extent that Arko suggests that the period starting April 1, 2005 through May 31, 2005 was a transition period for which the Government required Arko to provide phase-in or phase-out services for a new contractor. A1-2.

**Plaintiffs Proposed Finding No. 14:**

Plaintiff continued, through its attorneys and its personnel, to advise the Contracting Officer that Modification No. 21 was, in effect, void and of no effect since FAR 52.217-8 OPTION TO EXTEND SERVICES did not provide the Contracting Officer authority for its issuance; that Plaintiff would continue, under protest, to provide the guard services; and that

Plaintiff would seek compensation under FAR 52.237-3 CONTINUITY OF SERVICES for the guard services it rendered during the post contract period commencing April 1,2005.

**Response:**

Not in dispute, except to the extent that Arko's use of the word "advised" suggests that plaintiff's attorney and any other "personnel" were stating facts, rather than an incorrect legal opinion regarding FAR 52.217-8 and the validity of modification No. 21.

**Plaintiffs Proposed Finding No. 15:**

A final decision of the Contracting Officer, set forth in a letter dated March 18, 2005 and received by email by Plaintiff on March 21,2005, directed, in effect, that Plaintiff, "in accordance with Modification No. 21 as amended," provide guard services (i.e., during a period of transition between contractors) for a period of not only the 30 days of April 2005 initially at issue but also now for an additional 31-day period extending through May 31, 2005. The final decision also stated that Plaintiff's entitlement to compensation for providing guard services subsequent to March 3 1, 2005 shall be in accordance with Modification No. 21, i.e., FAR 52.217-8 OPTION TO EXTEND SERVICES.

**Response:**

Not in dispute except to the extent that Arko suggests that the period starting April 1, 2005 through May 31, 2005 was a transition period for which the Government required Arko to provide phase-in or phase-out services for a new contractor. Al-2.

**Plaintiff's Response to Defendant's Response:**

Plaintiff disputes Defendant's response and states that the period starting April 1, 2005 through May 31, 2005 was a transition period during which the Government required Arko to provide phase-out guard services until a new contactor could commence the services.

*Defendant's* **Proposed Finding No. 15A**

The services required pursuant to modification No. 21 were the same services provided by Arko prior to April 1, 2005. A2, 5-15, 57-62, 89-92. Modification No. 21 did not require Arko to perform any phase-in or phase-out services. A2, 89-92.

**Plaintiff's Response:**

Modification No. 21 purported to extend "the contractual period, beginning from April 1, 2005 through to May 31, 2005." Plaintiff interpreted Modification No 21 to call for Plaintiff to perform phase-out guard services during this period of transition that Plaintiff rendered during the contract period.

*Defendant's* **Proposed Finding No. 15B**

On April 26, 2005, the Department of State awarded contract S-CY600-05-C-0111 to Wackenhut International, Inc. ("Wackenhut"), effective June 1, 2006, with a start of performance by Wackenhut of June 1, 2006. A2.

**Plaintiff's Response:**

Plaintiff has no knowledge regarding the information in the prior sentence. However, Plaintiff has knowledge that the company Group-4 commenced providing the guard services for the Embassy on June 1, 2005 and continues to this time to provide such services.

**Plaintiff's Proposed Finding No. 16:**

Plaintiff provided Defendant the guard services during the period April 1, 2005 through May 31, 2005.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 17:**

Plaintiff submitted its certified claim for payment in accordance with FAR 52.237-3 CONTINUITY OF SERVICES for providing such services to Defendant, and entitlement to such claim was denied by the Contracting Officer on the basis that "the option was properly exercised under FAR 52.217-8 in a Final Decision letter dated March 31,2006.

**Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 18: The Contract includes options. Response:**

Not in dispute.

**Plaintiffs Proposed Finding No. 19:**

FAR 17.204(e) states in part that "the total of the basic and option periods shall not exceed five years in the case of services."

**Response:**

Plaintiff's proposed finding No. 19 is not a statement of fact but rather a statement of law, to which no response is required.

**Plaintiffs Proposed Finding No. 20:**

FAR 17.204(a) states in part that "The contract shall specify limits on . . . the overall duration of the term of the contract, including any extension."

**Response:**

Plaintiffs proposed finding No. 20 is not a statement of fact but rather a statement of law, to which no response is required.

**Plaintiffs Proposed Finding No. 21:**

Contract No. S-CY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 states that "The total duration of the contract, including the exercise of any options under this clause, shall not exceed five years." The "limits" on the duration of the contract is accordingly five years.

**Response:**

There is no dispute that Contract No. S-CY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 contains a full-text deviation of FAR clause 52.217-9 which states, in part, "The total duration of the contract, including the exercise of any options under this clause, shall not exceed five years." The second sentence of proposed finding number 21 is an incorrect legal interpretation of the contract and of the clause referred to by plaintiff. See Def. Br. at 8-13.

**Plaintiffs Proposed Finding No. 22:**

March 31, 2005 was the date on which the total duration of the contract reached five years.

**Response:**

Not in dispute, except to the extent that Arko suggests that the "total duration" of the contract, as of March 31, 2005, prohibited the Government from unilaterally requiring services after March 31, 2005 pursuant to FAR clause 52.217-8. See Def. Br. at 8-13.

**Plaintiffs Proposed Finding No. 23:**

Modification No. 21 directing Contractor to perform guard services in April 2005 called for performance of work beyond the March 31, 2005 date on which the total duration of the contract was reached and beyond the "limits" on the term of the Contract.

**Response:**

There is no dispute that Modification No. 21 called for performance of work by Arko beyond March 31, 2005. However, plaintiff's statement that March 31, 2005 is the "date on which the total duration of the contract was reached" is ambiguous; to the extent that Arko suggests the Government could not require continued services pursuant to FAR clause 52.217-8 (incorporated by reference in the contract), Arko's suggestion is based upon an incorrect interpretation of the contract. See Def. Br. at 8-13. Similarly, Arko's suggestion that

performance by Arko pursuant to FAR clause 52.217-8 exceeded the limits of the contract is based upon an incorrect interpretation of the contract. See Def. Br. at 8-13.

**Plaintiffs Proposed Finding No. 24:**

The first sentence of FAR clause 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989) states: "The Government may require continued performance of any services within the limits and at the rates specified in the contract." However, these rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor." (Emphasis supplied)

**Response:**

Plaintiff's proposed finding No. 24 is not a statement of fact but rather a statement of law, to which no response is required.

**Plaintiffs Proposed Finding No. 25:**

The third and fourth sentence of FAR section 37.111 Extension of Services, which prescribes policies and procedures with respect to the use of FAR clause 52.217-8, state: "In order to avoid negotiation of short extensions to existing contracts, the contracting officer may include an option clause (see 17.208(f)) in solicitations and contracts which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract. However, these rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor." (Emphasis supplied)

**Response:**

Plaintiff's proposed finding No. 25 is not a statement of fact but rather a statement of law, to which no response is required.

**Plaintiff's Proposed Finding No. 26:**

The prices for guard services in April 2005 stated on the page containing prices appended to Modification No. 21 were prices that were not "specified" in the Contract prior to issuance of Modification No. 21.

**Response:**

Contrary to Arko's assertion, the rates provided in Modification No. 21 were the rates specified in the contract, more specifically the same rates specified by bilateral modification No. 18, signed in December, 2003, for the fourth option year. App. at 62, 89-92.

**Plaintiff's Proposed Finding No. 27:**

The "prices" or "adjusted rates" for services in April 2005 stated on the page containing prices appended to Modification No. 21 were not represented to be the result of "revisions to prevailing labor rates provided by the Secretary of Labor".

**Response:**

Not in dispute.

**Plaintiffs Proposed, Finding No. 28:**

Neither Modification No. 21 nor the Contracting Officer's Final Decision letter of March 20, 2005, contained a pricing schedule (or specified any "rate") for work to be performed in May 2005.

**Response:**

Arko is incorrect. Modification No. 21 included rates for the period through May 2005. App. 89-92.

Respectfully submitted,

*/s/ Michael J. Shea*
MICHAEL J. SHEA
Lewis S. Wiener
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2415
Phone: (202) 383-0161
Fax: (202) 637-9593

October 19, 2006

Attorneys for Plaintiff