# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ARKO EXECUTIVE SERVICES, INC.** **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-1193C; 06-0296C** |
| | ) | |
| **THE UNITED STATES,** | ) | **JUDGE ALLEGRA** |
| | ) | |
| **Defendant.** | ) | |

## SUPPLEMENT TO PLAINTIFF'S APPENDIX

MICHAEL J. SHEA
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004-2415
Phone: (202) 383-0161
Fax: (202) 637-3593

Dated November 3, 2006

# INDEX TO SUPPLEMENT TO PLAINTIFF'S APPENDIX


| Document | Pages |
|---|---|
| Affidavit of Georgios Danos, dated November 1, 2006 | 1-5 |
| Letter from Michael J. Shea, as Plaintiff's counsel, to Mr. Kurt Hoyer, as Contracting Officer, dated March 14, 2005 | 6 - 11 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ARKO EXECUTIVE SERVICES, INC.<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 05-1193C; 06-0296C |

AFFIDAVIT OF GEORGIOS DANOS

I, Georgios Danos, being duly sworn, hereby states as follows:

1. I am over the age of 18 and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.

2. I have been and am currently the Area Manager for Arko Executive Services, Inc. ("Arko"), in Cyprus. I was personally closely involved in directing the administration in Cyprus of Contract No. S-CY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 between the United States Department of State and Arko, under which contract Arko performed security guard services for the United States Embassy at Nicosia, Cyprus. The contract provided that the total duration of the contract shall not exceed five years, and the contract expired March 31, 2005.

3. On February 15, 2005, Arko sent an email to Kurt Hoyer, the Government's Contracting Officer stating: "Since you have not responded to my email of February 8, 2005 regarding the embassy's need for phase in/phase out services after the March 31 expiration of the Arko Executive Services security guard contact, we presume such

services are not required. Therefore, we shall proceed to give employees and the Cyprus government the required notices on February 28th. Security guard services will cease at midnight, March 31, 2005."

4. On February 16, 2005, Contracting Officer Hoyer responded by email to Arko stating: "You are correct, we do not anticipate the need for any phase in/phase out services."

5. Arko proceeded to give the employees and the Cyprus government the notice that employment with Arko would end on March 31, 2005. Those notices were transmitted on or about February 28, 2005.

6. On the afternoon of March 4, 2005, the Contracting Officer presented to Arko Modification No. 21, a unilateral change order directing an extension of "the contractual period, beginning April 1, 2005 through to April 30, 2005" and citing FAR clause 52.217-8 Option to Extend Services as the authority for its issuance. The document was signed by the Contracting Officer.

7. Arko, through its attorney and its personnel, disputed the authority of the Contracting Officer to use FAR clause 52.217-8 to unilaterally extend the duration of the contract beyond a total duration of five years and stated that Arko would perform the security guard services under protest and on the basis that Arko would be compensated for the post-contract phase out security guard services pursuant to FAR clause 52.237-3 Continuity of Services.

8. On March 19, 2005, the Contracting Officer sent Arko an email stating "The attached letter holds our reply to Mr. Shea and final decision on the matter. You will note that I have changed the 30 day extension to 60 days. We are working to get it all

done in the shortest time frame possible but it seemed wiser to have some safety cushion."

9. The letter of the Contracting Officer to Arko, dated March 18, 2005, forwarded by the Contracting Officer's email of March 19, 2005, stated that the Contracting Officer respectfully disagrees with the interpretation of Mr. Shea, counsel to Arko Executive Services, as to the use of FAR 52.217-8 to extend this contract for a period of 30 days as set forth in Modification No. 21 dated March 4, 2005; that "fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow enough time for the new contractor to be fully operational and will avoid having to extend later on."; that Arko is required to provide performance for the period April 1, 2005 through May 31, 2005 in accordance with Modification No. 21 as amended; and that if Arko wishes to appeal this decision, Arko should comply with the procedures set forth in FAR Subpart 33.2 Disputes and Appeals.

10. On March 22, 2005, the Contracting Officer issued an amended Modification No. 21, calling for an extension of the contractual period through May 31, 2005.

11. Arko appealed the Final Decision to the United States Court of Federal Claims in compliance with FAR Subpart 33.2.

12. Arko's performance of the contract was completed March 31, 2005, at which time the contract expired.

13. The security services that Arko rendered in the period April 1, 2005 through May 31, 2005, were performed in accordance with FAR 52.237-3 Continuity of Services. The services were rendered for the Department of State in the transition period from April 1, 2005 (following the expiration of Arko's contract on March 31, 2005) through May 31, 2005. On June 1, 2005, the successor contractor for providing security guard

services for the Embassy, a company called Group-4, commenced providing the security guard services.

14. The Contracting Officer's email of March 19, 2005 and his letter of March 18, 2005, make clear that the Government was "working to get it [i.e., the transition from Arko to the successor contractor for security guard services] all done in the shortest time frame possible." "This [i.e., an extension of 60 days] will allow enough time for the new contractor to be fully operational and will avoid having to extend later on."

15. On June 1, 2005, the new contractor for supplying guard services, Group-4, commenced performing the security guard services for the Embassy.

16. The services performed by Arko in the period April 1, 2005 through May 31, 2005, were post-contract services required by the Department of State during a period of transition, and Arko performed those services pursuant to FAR 52.237-3 Continuity of Services and on the basis that Arko would be compensated for such services by the Department of State pursuant to FAR 52.237-3.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge.

Dated the 1st day of November 2006.

Georgios Danos

CYPRUS
CITY OF NICOSIA
EMBASSY OF THE UNITED
STATES OF AMERICA } SS

On the 1st the day of November 2006, before me personally appeared Georgios Danos, known to me to be the person whose name is subscribed herein.

In witness whereof I hereunto set my hand and official seal.

E Miller

**Eleni Miller**
**Consular Associate**
**of the United States of America**

Sutherland
Asbill &
Brennan LLP
ATTORNEYS AT LAW

1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
202.383.0100
fax 202.637.3593
www.sablaw.com

MICHAEL J. SHEA
DIRECT LINE: 202.383.0161
Internet: mike.shea@sablaw.com

March 14, 2005

**BY EMAIL**

Mr. Kurt Hoyer
Contracting Officer
GSO
U.S. Embassy
Nicosia, Cyprus

Re: Contract No.: S-CYG00-00-0006

Dear Mr. Hoyer:

Our law firm has been engaged by Arko Executive Services Inc. ("Company") to represent it in connection with issues related to unilateral Modification No. 21, which seeks continued performance of the contract during a 30 day extension of the term of Contract No. S-CY600-00-006 beyond its expiration date of March 31, 2005.

A copy of your email of Friday, March 11, 2005 to Mr. Ken Oringer of the Company has been furnished to me. You refer therein to FAR 17.204(e) and DOSAR 617.204(e) and state that the procurement executive has the authority to extend the contract beyond 5 years.

The fact that the procurement executive may have the authority to extend a contract beyond 5 years has legal effect and relevance to a contracting officer in administering a contract, to a contractor, to government financing officers and to others with an interest in the contract only if the procuring contracting officer and the acquisition team involved in the award have

WO 374902.1

tailored the language of the contract to state with specificity the total length of the term including the extension authorized by the procurement executive. That was not done for the contract in issue.

The contract in issue consistently specifies a 5-year limitation on the period of performance of the contract.

1. Clause F.4 Period of Performance, at page 30 of Modification No. 8 of the contract, states: "F.4.1. The performance period of this contract is from date of Notice to Proceed and continuing for 12 months, with four, one-year options to renew. . . . ." (Emphasis supplied)

2. FAR Clause 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 1989) (DEVIATION), at page 47 of the contract, at subparagraph "c" states: "(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed five years. (Emphasis supplied)

* * *

FAR Clause 17.204(a) and (e) provide:

> (a) The contract shall specify limits on the purchase of additional supplies or services, or the overall duration of the term of the contract, including any extension. (Emphasis supplied)
>
> * * *
>
> (e) Unless otherwise approved in accordance with agency procedures, the total of the basic and option periods shall not exceed 5 years in the case of services, and the total of the basic and option quantities shall not

Mr. Kurt Hoyer
March 14, 2005
Page 3

> exceed the requirement for 5 years in the case of supplies. These limitations do not apply to information technology contracts. However, statutes applicable to various classes of contracts, for example, the Service Contract Act (see 22.1002-1), may place additional restrictions on the length of contracts.

Any authorized extension of the option period beyond 5 years approved in accordance with FAR 17.204(e) is required by FAR 17.204(a) to be included in the total duration of the contract and such total duration is to be specified in the contract, *i.e.*, "The contract shall specify limits on . . . the overall duration of the term of the contract, including any extension."

* * *

Modification No. 21 is issued pursuant to FAR clause 52.217-8 OPTION TO EXTEND SERVICES (AUG 1989). The first sentence thereof provides: "The Government may require continued performance of any services within the limits and at the rates specified in the contract." (Emphasis supplied)

Clearly a 30-day extension of the performance period beyond 5 years, as is the situation here, is not "within the limits . . . specified in the contract". FAR clause 52.217-8 does not authorize extending the period of performance beyond March 31, 2005.

* * *

Assuming solely for purposes of discussion but not admitting that the Government had a right to extend the performance period beyond March 31, 2005, the Government in our view waived that right. In this connection, Mr. Ken Oringer's email to you of March 07, 2005, 6:14

WO 374902.1

PM, reports that the Embassy advised the Company that the Embassy did not anticipate it would have a need for post contract services. His email to you states:

> "On February 8, 2005, by letter dated February 7, 2005 to you from me, you were asked whether the Embassy would require Arko services beyond the March 31st expiration date. A reply was requested by February 15th. Notices to employees and the government regarding loss of employment that are required by Cyprus law on pain of significant liability necessitated prompt notification of Embassy requirements. You did not respond by February 15th. I sent you another email on February 15th indicating the Company presumed that your lack of response meant that no post contract services would be required and that Arko would move forward with the employee and government notices. You responded to the email and said that the Company was correct that the Embassy did not anticipate the need for post contract services. Arko proceeded to give the employees and government notice that employment with Arko would end on March 31, 2005. The notices were transmitted on or about February 28th. On March 4, 2005 at 2:00 pm you presented to our local agent Mr. Douglas Duncan a contract modification for a 1 month contract extension. Mr. Duncan told you that he could not respond until Monday, March 7th. This is Arko's response."

* * *

FAR Clause 52.237-3 CONTINUITY OF SERVICES (JAN 1991) provides authority which would enable the Company to provide services subsequent to expiration of the contract on March 31, 2005. Your earlier response to the Company that the Embassy did not anticipate the need for post contract services caused the Company to serve its employees and the Cyprus authority notice that employment would end March 31, 2005, and such response will make this alternative more difficult to implement if the U.S. Government now seeks continued services after March 31, 2005.

* * *

The statement in your March 11th email to Mr. Oringer that you are "prepared to debar the company" over this issue is highly inappropriate. The Government has no right under FAR 52.217-8 to issue a unilateral modification calling for Company to perform beyond March 31, 2005.

I am sending a copy of this letter to Dennis Gallagher, Esq., Assistant Legal Advisor for Buildings and Acquisitions at State, by Federal Express for delivery tomorrow morning, and am hereby requesting (1) that upon his review of this matter he advise you that FAR clause 52.237-3 is the appropriate clause for use in the present circumstances if State desires post contract services and not FAR clause 52.217.8, and (2) that he be in contact promptly with me by email or phone as to his decision regarding this request. I further request that you take no further action regarding the issues here involved until our office has had the response of Mr. Gallagher to this letter and I have had time to respond.

I appreciate your careful consideration of this letter. If either you or Mr. Gallagher have any question or comment, please let me know.

Very truly yours,

Michael J. Shea
as Counsel to Arko Executive Services

WO 374902.1

MJS/

cc: Dennis Gallagher, Esq.
Assistant Legal Advisor for
Buildings and Acquisitions
U.S. Department of State

Mr. Kenneth W. Oringer
Executive Vice President & CFO
Arko Executive Services

John Marshall, Esq.
General Counsel
Arko Executive Services

WO 374902.1