# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ARKO EXECUTIVE SERVICES, INC.** **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 05-1193C; 06-0296C** |
| | ) | **Judge Allegra** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S SUPPLEMENTAL BRIEF

Plaintiff respectfully submits this supplemental brief pursuant to the Court's order dated January 25, 2007, permitting the parties the opportunity to address any potential jurisdictional defects with respect to case numbers 05-1193 or 06-296 (referred to hereinafter as Arko I and Arko II respectively). During the oral argument held January 24, 2007, the court sua sponte raised the issue whether the Court lacks jurisdiction to entertain Arko II based upon Sharman Co. Inc. v. United States, 2 F.3d 1564 (Fed. Cir. 1993), overruled on other grounds by Reflectone Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995).

Defendant agrees with and adopts the analysis of defendant, as set forth in its Supplemental Brief, and the conclusions stated in the first three sentences of the last paragraph of such brief, stating : "Because the claim in Arko I for declaratory relief is not the same as the certified claim for a sum certain addressed by the contracting officer in his 2006 final decision, the contracting officer did not lack authority to issue the 2006 decision. Therefore, the claim in Arko II for damages based upon the 2006 final decision was not barred pursuant to Sharman.

For these reasons, the Court possesses jurisdiction to entertain the claims in Arko I and Arko II." (Defendant's Supplemental Brief, dated February 28, 2007, p.5.).

Plaintiff's claim in Arko I was a claim for declaratory judgment. Plaintiff sought a declaratory judgment, praying (i) that the Court declare that the March 18, 2005 final decision of the Contracting Officer (requiring that plaintiff's entitlement to compensation for the guard services to be performed by Plaintiff in April and May 2005 be determined in accordance with Modification No. 21, issued unilaterally by defendant and citing FAR 52.217-8 as authority for its issuance) be set aside as being void, unenforceable, and not in accordance with law, and (ii) that the Court declare Plaintiff entitled to have its compensation for performance of such services computed instead in accordance with FAR 52.237-3(d) CONTINUITY OF SERVICES. Plaintiff's timely appeal from the final decision is presented in Arko I. Unlike the facts reported in Sharman, Arko did not include or assert any claim for, or seek, money damages in Arko I.

Plaintiff's claim in Arko II was a claim computed in accordance with FAR 52.237-3(d) seeking, as a matter of right, payment of money in a sum certain. Subsequent to expiration of the maximum duration of the contract on March 31, 2005, plaintiff undertook to perform in March and April 2005 the guard services directed by Modification No. 21. However, plaintiff advised defendant at that time that it would proceed to perform such services (i) "under protest", since Plaintiff viewed the issuance of Modification No. 21 to be in violation (breach) of the contract, and (ii) on the basis that Plaintiff be compensated for such post-contract services computed in accordance with FAR 52.237-3(d). Subsequent to plaintiff's performance of the services, plaintiff submitted to the Contracting Officer its certified claim computed in accordance with 52.237-3(d) in the amount of $184,010.10 for the money damages resulting to plaintiff from performance of the work. Submission of this claim to the Contracting Officer was in accordance

with section 605(a) of the Contract Disputes Act (41 U.S.C. 601 et seq.), which states "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for decision." The Contracting Officer denied the claim in a final decision letter dated March 21, 2006. Plaintiff's timely appeal from the final decision is presented in Arko II. In ruling upon a motion by plaintiff, the Court on May 12, 2006 issued an order directing the Clerk of the Court to consolidate the cases.

• • •

Plaintiff disputes, however, the final sentence of Defendant's Supplemental Brief that states "For the reasons stated in our previous briefs, we respectfully request that the Court grant summary judgment in favor of the Government."

• • •

Because the record in these cases does not include a transcript of the January 24, 2007 oral argument, plaintiff views it necessary to report that at the oral argument plaintiff argued that the Federal Circuit Court in Freightliner v. Caldera, 225 F.3rd 1361, 1366 (2000) (a case cited by defendant for a different point in Defendant's Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment, p. 13) established and set forth the standard to be applied here in determining whether the FAR 52.217-8 option was effectively exercised.

The Court stated the standard or test to be: "For an option to be effective, the Government must exercise the option in exact accord with the terms of the contract."

Plaintiff argued at the oral hearing that Defendant failed to exercise the FAR 52.217-8 option "in exact accord with the terms of the contract." The first sentence of FAR 52.217-8, in defining the circumstances in which the clause may be used, states "The Government may

require continued performance of any services within the limits and at the rates specified in the contract." Modification No. 21, as amended March 18, 2005 stated that it "extends the contractual period, beginning April 1, 2005, through to May 31, 2005" and set forth in an amended schedule seriously inadequate rates, unilaterally determined by the government, intended to be applicable to the services to be provided during the period April 1, 2005 through May 31, 2005. Plaintiff argued at the oral argument that the extension of the contract period ordered was not "within the limits" (discussed in the footnote below)[1] nor "at rates" specified by the contract.

At the oral argument plaintiff also argued that there are "no rates specified in the contract" with respect to the services performed by plaintiff in April and May 2005; that the only rates specified by the contract are rates for work performed by plaintiff during the one-year initial term and during each of the four one-year options (i.e., rates covering the period from April 1, 2000 through March 31, 2005); and that the mutually agreed rates specified by the contract are applicable for use only during the specific year (or lesser period) that the multi-page rate schedule states the prices shown to be applicable.[2]

---

[1] Clause F.4 of the Contract, entitled "Period of Performance" set forth and imposed a "limit" on the "total duration of this contract" and accordingly restricted extension of the performance period beyond that duration. Provision F.4.1 of the clause states that the performance period of the Contract shall consist of an initial 12 month period and four, one-year options to renew. Provision F.4.2. expressly provides (1) that the Government" may extend this contract in accordance with the option clause . . . Option to Extend the Term of the Contract (Deviation), which also specifies the total duration of the contract." (Such option clause proscribes use of this clause to extend the performance period of the contract beyond a total duration of five years.) Provision F.4.3 states that the Government may exercise the option set forth at FAR 52.217-8 Option to Extend Services within the currently ongoing period of performance or within 30 days after funds for the option become available. There is no language in provision F.4.3 or elsewhere in this contract that authorizes the contracting officer to use FAR 52.217-8 to extend the total duration of this contract beyond the total duration of the contract specified by FAR 52.217-9(c); and FAR 52.217-9(c) specifies that "the total duration of this contract . . . shall not exceed five year".

[2] The Government does not dispute Plaintiff's Proposed Finding No. 3 that "No rates were contained or specified by the Contract for guard services rendered after March 31, 2005". Defendant's Response to this proposed finding states "Not in dispute". (See Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact and Defendant's Proposed Findings of Uncontroverted Fact, pp. 2-3.)

• • •

Plaintiff also argued that the statement of the Federal Circuit as to the purposes of the Continuity of Services clause, FAR 52.237-3 in ITT Federal Services v. Widnall, 132 F.3d 1448, 1452 (1997) overrode and invalidated defendant's arguments with respect to the Continuity of Services clause that were based on the authority of ABC Health Care, VABCA No. 3462, 1992 WL 38651 (1992) and ABC Health Care, VABCA No. 3462E, 1994 WL 288132 (1994).

The Court in ITT Federal Services v. Widnall, states the purpose of the Continuity of Services clause to be:

> The purpose of the Continuity of Services clause is to facilitate the transition from one contractor to another or to the government. The original contractor is required, upon notice, to provide appropriate transition services, and to be reimbursed therefor. The term phase-in, phase-out operations means activities that assist a new contractor or the government in connection with the transition.

The Contracting Officer's email of March 23, 2005, transmitting his final decision letter dated March 18, 2005, and the final decision letter both make abundantly clear that the services to be rendered by plaintiff in April and May 2005 were vital to the Government and were intended and ordered by the Government to assist the Government "in connection with the transition", the period between the expiration of the total duration of Arko's contract on March 31, 2005 and the June 1 date on which the Government expected "the new contractor" to be commencing to provide the necessary guard services.

The Contracting Officer's March 23, 2005 email to plaintiff stated: "You will note that I have changed the 30 day extension to 60 days. We are working to get it all done in the shortest time frame possible but it seems wiser to have some safety cushion. I do not intend to ask for another extension."

In the March 18, 2005 final decision letter, the Contracting Officer stated … "fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow the new contractor to be fully operational and will avoid having to extend later on."

The contracting officer's statements make it perfectly clear that the services to be performed by plaintiff in April and May were "activities that assist … the government in connection with the transition" and were accordingly "phase-out", "post-contract" operations needed and ordered by the government "to allow the new contractor to become fully operational". Plaintiff submits FAR clause 52.237-3(d) is clearly applicable in this situation.

• • •

Plaintiff accordingly respectfully requests, on the basis of its submissions to the Court in these cases and of the oral argument, that (i) Plaintiff's motion for summary judgment on its motion that plaintiff's entitlement to payment for its services in March and April 2005 be computed in accordance with FAR 52.237-3(d) be granted by the Court, and that Defendant's cross motion for summary judgment on its motion that FAR 52.217-8 was properly (i.e., effectively) exercised be denied.

Respectfully submitted,

/s/ MICHAEL J . SHEA
MICHAEL J. SHEA
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 2004-2415
Phone: (202) 383-0161
Fax: (202) 637-3593

Dated this 29th day of March, 2007