# In The United States Court of Federal Claims

Nos. 05-1193C, 06-0296C

(Filed: September 12, 2007)

_____

| | |
|---|---|
| ARKO EXECUTIVE SERVICES, INC., | * |
|                               Plaintiff, | *  Cross-motions for summary judgment; |
| | *  Contract Disputes Act; Extension of contract |
| | *  – whether extension should be viewed as |
|          v. | *  having been made under FAR § 52.217-8 |
| | *  (option to extend service) or FAR § 52.237-3 |
| THE UNITED STATES, | *  (continuity of service); FAR § 52.217-9(c) – |
| | *  total duration clause involving options not a |
|                               Defendant. | *  limit on the use of other FAR extension |
| | *  provisions; *Storage Technology* followed. |

_____

**OPINION**

_____

*Michael J. Shea*, Sutherland, Asbill & Brennan, Washington, D.C., for plaintiff.

*Michael James Dierberg*, United States Department of Justice, Washington, D.C., with whom was *Peter D. Keisler*, Assistant Attorney General, for defendant.

**ALLEGRA, Judge:**

This case, which arises under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, stems from a contract between plaintiff, Arko Executive Services, Inc. (Arko), and the United States to provide guard services at the United States Embassy in Nicosia, Cyprus (the Embassy). Plaintiff claims that it is entitled to additional compensation owing to the extension of this contract. Defendant argues that the extension was properly made under the option to extend services clause found in one provision of the Federal Acquisition Regulation (FAR), 48 C.F.R. § 52.217-8, while plaintiff asserts that the extension could have occurred only under the continuity of services clause found in another FAR provision, 48 C.F.R. § 52.237-3. Unlike the former clause, the latter provides for the reimbursement of certain extraordinary costs, the recoverability of which forms the crux of this dispute.

**I.     BACKGROUND**

Arko is a Georgia corporation that provides private security services. The United States Department of State (State Department) retained Arko to provide security guard services to the Embassy. This agreement was embodied in Contract No. S-CY-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 (the "contract").

Section F.4.1. of the contract, entitled "Period of Performance," specified that "[t]he period of this contract is from the date of Notice to Proceed and continuing for 12 months, with four, one-year options to renew." Other portions of section F.4. provided for the continued performance of the contractor pursuant to two standard FAR provisions, FAR §§ 52.217-8 and 52.217-9. The first of these, entitled "Option to Extend Services," which was incorporated by reference, provided, in pertinent part:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract . . . The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within [the period specified in the Schedule].

48 C.F.R. § 52.217-8. The second provision, FAR § 52.217-9, "Option to Extend the Term of the Contract," which was incorporated in full text in section I.1.2. of the contract, allowed the government to renew the contract for an additional one-year term by written notice to the contractor, provided certain notice provisions were observed. This clause also provided that the "total duration of this contract, including the exercise of any options under this clause, shall not exceed five years." FAR § 52.217-9(c).

The contract contained yet another extension provision, FAR § 52.237-3, entitled "Continuity of Services[,]" which, as restated in section I.1.2. of the contract, provided that the contractor shall "furnish phase-in, phase-out services for up to 90 days after [the] contract expires" upon written notice from the contracting officer. FAR § 52.237-3(b). This clause, *inter alia*, required the contractor to "negotiate in good faith a plan with a successor to determine the nature and extent of phase-in, phase-out services required," which plan "shall specify a training program and a date for transferring responsibilities for each division of work described in the plan." *Id*. FAR § 52.237-3(d) provided for reimbursement of "all reasonable phase-in, phase-out costs . . . and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract."

The government exercised all four one-year options available under FAR § 52.217-9 and F.4.2., thereby extending the contract to March 31, 2005. In the midst of the last option year, the State Department, on November 10, 2004, issued a solicitation for a successor contract. On February 8, 2005, Arko wrote the State Department's contracting officer and asked whether its services would be required "beyond the March 31, 2005 expiration date of the contract." Receiving no response, on February 15, 2005, Arko sent an e-mail to the contracting officer

stating that it assumed that its services would not be needed after March 31, 2005. The contracting officer replied that the Embassy did not anticipate the need for these services.

Nonetheless, in early March 2005, it became evident to the contracting officer that, due to unforeseen delays, the State Department would not have a successor contractor in place by April 1, 2005. On March 4, 2005, the contracting officer tendered Modification No. 21 to Arko's project manager in Cyprus. That modification called for Arko to provide guard services from April 1, 2005, to April 30, 2005, citing, as authority for this modification, FAR § 52.217-8 "Option to Extend Services." Appended to the modification was a document setting forth prices for the work. The modification stated that all other terms and conditions of the contract remain the same. Arko disagreed that FAR § 52.217-8 provided authority to extend services after March 31, 2005, arguing instead that FAR § 52.237-3 provided the sole basis for doing so. On March 14, 2005, Arko informed the contracting officer that it would continue to provide guard services, but would do so under protest and seek compensation under FAR § 52.237-3 for the services provided commencing April 1, 2005.

On March 18, 2005, the contracting officer issued a final decision reiterating that he was requesting the extended services pursuant to FAR § 52.217-8, that compensation would be in accordance with the prices given in the modification, and that services would now be needed for additional month, making the total extension period from April 1, 2005, to May 31, 2005. The decision further explained: "In addition, fearing that 30 days may not be enough the Embassy feels compelled to amend the extension to 60 days. This will allow enough time for the new contractor to be fully operational and will avoid having to extend later on." Arko provided the guard services from April 1, 2005, through May 31, 2005, again under protest. On April 26, 2005, the State Department awarded a contract to Wackenhut International with a start date of June 1, 2005.

On November 10, 2005, Arko filed a complaint in this court seeking a determination that the contracting officer's final decision was "void, unenforceable, arbitrary, capricious, and not in accordance with law and should be set aside (with the amount due Plaintiff to be determined)," and that Arko was entitled to compensation pursuant to FAR § 52.237-3. This initial complaint did not seek an explicit amount of monetary damages. On January 18, 2006, Arko submitted a $184,010.10 claim to the contracting officer for reimbursement for "phase-out" work provided after March 31, 2005. On March 21, 2006, the contracting officer denied this claim on the basis that services were provided pursuant to FAR § 52.217-8 at the rates indicated in the modification. On April 14, 2006, plaintiff filed a second complaint (06-296C) seeking $184,010.10 in damages, as well as fees and costs. On May 12, 2006, the court consolidated these cases.

On August 31, 2006, plaintiff filed its motion for summary judgment on the issue of its entitlement to payment pursuant to FAR § 52.237-3(d) "Continuity of Services." On October 19, 2006, defendant opposed plaintiff's motion and cross-moved for summary judgment on liability, arguing that FAR § 52.237-3 did not apply to the services performed by Arko and that the

government was permitted to extend services under FAR § 52.217-8. On October 19, 2006, plaintiff filed its response and reply. On November 1, 2006, defendant filed its reply. On January 24, 2007, the court heard oral argument.[1]

## II.   DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When reaching a summary judgment determination, the court's function is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A] [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). Rather, the court must determine whether the evidence presents a disagreement sufficient to require fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250-52; *Lockheed Martin Corp. v. United States*, 70 Fed. Cl. 745, 748-49 (2006). In doing this, all facts must be construed in a light most favorable to the nonmoving party and all inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587-88 (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)); *see also Lockheed Martin*, 70 Fed. Cl. at 749; *L.P. Consulting Group, Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).

Arko contends that the services it performed between April 1, 2005, and May 31, 2005, were governed by the FAR continuity-of-services clause 237-3 (the 237-3 clause), which provides for the reimbursement of "all reasonable phase-in, phase-out costs," as well as a "fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract." Of course, defendant did not invoke that clause in issuing the modification to the contract that required this performance, but instead invoked the FAR option-to-extend clause 217-8 (the 217-8 clause), which does not provide for the recovery of the costs and profits allowed by the 237-3 clause.

---

[1] At oral argument, the court *sua sponte* raised the issue whether, based upon *Sharman Co., Inc. v. United States*, 2 F.3d 1564 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995), it lacked jurisdiction to hear the second suit. The parties subsequently submitted supplemental briefs on the *Sharman* jurisdictional issue, both agreeing that this court has jurisdiction. Upon further review, the court sees no basis upon which to disagree with this conclusion.

Instead, the 217-8 clause indicates that defendant may require continued performance "at the rates specified in the contract," "adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor." Plaintiff, however, contends that this court should view defendant as having invoked the 237-3 clause, essentially arguing that there was no other valid basis upon which to extend the contract in question.

Fundamentally, this issue presents a question of contract interpretation, the resolution of which "begins with the plain language of the written agreement." *Hercules, Inc. v. United States*, 292 F.3d 1378, 1380-81 (Fed. Cir. 2002); *see also Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993) ("A contract is read in accordance with its express terms and the plain meaning thereof."); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). The court "must interpret [a contract] as a whole and 'in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.'" *United Int'l Investigative Serv. v. United States*, 109 F.3d 734, 737 (Fed. Cir. 1997) (citing *Granite Const. Co. v. United States*, 962 F.2d 998, 1003 (Fed. Cir. 1992)); *see also Gardiner, Kamya & Associates, P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006); *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996) (describing as a "settled principle[ ] of contract interpretation" that courts "view[ ] the contract as a whole"); 11 Richard A. Lord, Williston on Contracts § 32:5 at 420 (4th ed. 1999). Logic suggests that the latter principles should apply with particular force in the context of the FAR, which, after all, is designed to provide a set of integrated procurement rules.

Contrary to plaintiff's claims, the situation encountered here fell squarely within the coverage of the 217-8 clause, which provides a safety valve for extending an existing contract where the award of subsequent contract is delayed. Without much fanfare, that clause simply states that "[t]he option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months." Section 37.111 of the FAR – relevant because it refers to FAR § 17.208(f), which, in turn, requires contracts to include the 217-8 clause – explains the purpose of the 217-8 clause thusly:

> Award of contracts for recurring and continuing service requirements are often delayed due to circumstances beyond the control of contracting offices. Examples of circumstances causing such delays are bid protests and alleged mistakes in bid. In order to avoid negotiation of short extensions of existing contracts, the contracting officer may include an option clause (*see* 17.208(f)) in solicitations and contracts which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract.

48 C.F.R. § 37.111; *see also PGBA, LLC v. United States*, 57 Fed. Cl. 655, 662 (2003) (similarly describing the purpose of this provision); *Storage Technology Corp. v. CCL Serv. Corp.*, 94 F. Supp. 697, 701 (D. Md. 2000) (same). Here, of course, the contracting officer was faced with circumstances beyond his control that, absent an extension of the prior contract, would have led

to the suspension in guard services after March 31, 2005.  That scenario fits like a glove the circumstances described in the 217-8 clause.

For its part, plaintiff cites no authority that would allow this court to treat the extension here as arising under the 237-3 clause.  Assuming *arguendo* such a recharacterization is possible, there certainly is no basis for doing so here, as the situation encountered hardly fits the requirements outlined in that continuity of services clause.  That clause requires the incumbent contractor to provide transition services when, "upon contract expiration, a successor, either the Government or another contractor," are to provide the same services.  FAR § 52.237-3(a); *see also ITT Federal Servs. Corp. v. Widnall*, 132 F.3d 1448, 1452 (Fed. Cir. 1997) ("The purpose of the Continuity of Services clause is to facilitate the transition from one contractor to another or to the government."); FAR § 37.110 (describing the circumstances in which this clause should be inserted in a contract).  More specifically, under this clause, the contractor agrees to: "(1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor."  *Id*.  But, there is no indication that any of the services that plaintiff rendered here fell into these categories – indeed, there was no overlap between plaintiff's tenure, which ended on May 31, 2005, and that of the successor contractor, which began on June 1, 2005.  And while plaintiff focuses heavily on the reimbursement provisions of FAR § 52.237-3(d), it turns a blind eye to the other paragraphs of that section, which provide very detailed provisions for invoking and implementing this phase-in, phase-out provision.  Among these are: (i) the issuance of a written notice by the contracting officer invoking this provision, FAR § 52.237-3(b); (ii) the development "in good faith of a plan with a successor to determine the nature and extent of phase-in, phase-out services required," *id.*, and (iii) conformity with steps designed to facilitate the transfer of personnel from the incumbent to the successor contractor, FAR § 52.237-3(c).  None of these events occurred here, rendering this provision inapplicable.  *See, e.g.*, *ABC Health Care*, 93-2 B.C.A. ¶ 25672 (holding that this provision did not apply where there was no successor contractor and where the preconditions for invocation of the clause were not met).[2]  Rather, it appears that, during the period in question, plaintiff performed the same security services it always had – services for which compensation was owed, to be sure, but only under the 217-8 clause.[3]

---

[2]  Plaintiff supplied an affidavit in which one of its managers asserts that it supplied "post-contract services required by the Department of State during a period of transition."  But neither this affidavit nor any other evidence provided by plaintiff reveals that it performed any services different than those that it provided prior to the extension.  Plaintiff's conclusory statements to the contrary do not create a question of fact, *see, e.g., Ferring V.B. Varr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006), particularly in the face of an affidavit from the contracting officer specifically indicating that no new services were provided during the period in question.  *See also Anderson*, 477 U.S. at 248-49.

[3]  In claiming that it provided "phase out" services, plaintiff cites a passage in *ITT Federal Servs. Corp.*, 132 F.3d at 1452, in which the Federal Circuit indicated that "[t]he term 'phase-in, phase-out operations' means activities that assist a new contractor or the government

Plaintiff disagrees, arguing that the 217-8 clause may not be employed to extend the total contract performance period beyond five years. But, this claim proves too much. To be sure, FAR clause 52.217-9(c), as incorporated in the contract *sub judice*, stated that "[t]he total duration of this contract, including the exercises of any options under this clause, shall not exceed five years." But, by its terms, this provision limited the contract length only in terms of the exercise of options under "this clause," limiting, that is, only the options referenced in paragraph (a) of the 217-9 clause. Nothing in this clause suggests an intent to limit the temporary extensions afforded under other, entirely separate FAR contract clauses, among these the 217-8 clause.[4] Indeed, if these extension provisions became inoperative when all the renewal options under a contract were performed, then defendant and incumbent contractors operating under the FAR would be often left with no ready means to extend a fully-performed contract, even for the most exigent reasons. This court would need overwhelming textual support before it would hamstring the government in this fashion. In the absence of any textual support, it makes little sense to introduce such a harsh, inflexible and arbitrary rule into the FAR regime where a reasonable interpretation exists that gives meaning and purpose to all the affected provisions. *See L & A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 110-11 (5th Cir. 1994) ("A definition of a contract term that leads to impractical or commercially absurd results is unreasonable."); *see also* 11 Williston, *supra*, at § 32.11. And, in this regard, it should not escape notice that were the 217-9 clause interpreted in the limiting fashion plaintiff urges – again, barring the extension of contracts whose options have been fully performed – defendant here would have been barred from extending the contract not only under the 217-8 clause, but also under the 237-3 clause. Plaintiff thus ultimately is hoisted on the petards of its own interpretation of the relevant provisions – further indication, of course, that its interpretation is wrong.

Confirmation of this may be found in *Storage Technology*, *supra,* the only case that has directly confronted plaintiff's arguments regarding the scope of the 217-9 clause. In that case, a subcontractor brought action against the prime contractor on a government contract, in which the

---

in connection with the transition." But, the Federal Circuit certainly did not suggest that the mere continuation of services while a new contractor was being selected comes within this definition, observing instead, *per contra*, that severance payments that "had no role in effecting a transfer of operations[]" did not invoke the phase-out clause. *Id*. Moreover, the court plainly recognized that the invocation of the 237-3 clause is subject to procedural requirements, among them the receipt of a "proper notice." *Id*.

[4] *See Konitz Contracting,* Inc., 01-2 B.C.A. ¶ 31572 (2001) ("the limitation of the contract term by the FAR 52.217-9 clause does not preclude extensions beyond such term under the FAR 52.217-8 clause"); *Akal Security Inc.*, 91-2 C.P.D. ¶ 336 (1991) ("[FAR § 52.217-9] and FAR § 52.217-8 are not inconsistent. [The former] defines the overall potential term (with options) of the contract . . . ; FAR § 52.217-8 merely provides the agency with a right to seek up to an additional 6 months of contract performance . . . where exigent circumstances (such as delay in award of a follow-on contract) create the need for continued performance.").

subcontractor alleged that the prime contractor breached its contract by awarding work rendered during an extension of the contract to another subcontractor. 94 F. Supp. 2d at 699-700. The prime contractor asserted that the extension, in fact, was a disguised new contract because the 217-9 clause limited the overall term of the contract to 60 months. *Id.* at 700-01. Rejecting this cramped construction of the 217-9 clause, the district court instead found that the work was covered by an extension of the old contract under the 217-8 clause. It reasoned –

> Defendants' interpretation of these two clauses cannot be reconciled with the purpose set forth by 48 C.F.R. § 37.111, to allow the government to continue receiving services in the face of the all-too-common bid protest. Under Defendants' logic, the government may only exercise the extension of services option of 52.217-8 where a bid protest occurs after a term of less than 60 months. Where the government extends the contract to the full 60 months and then suffers a bid protest to the next solicitation, the government would be left with no recourse. Therefore, the court rejects Defendants' argument that the language of 52.217-9 precludes an extension under 52.217-8 beyond 60 months and finds that the "total duration of the contract" stated in 52.217-9 excludes the option available under 52.217-8.

94 F. Supp. 2d at 701. The court thus concluded that "[w]hen read in conjunction with the purpose and language of 52.217-8, the contract duration stated in 52.217-9 clearly does not include any extensions possible under 52.217-8." *Id.*[5]

In sum, the court concludes that defendant properly extended the contract *sub judice* under the 217-8 clause and that plaintiff, therefore, is entitled to no additional compensation for the work it performed.

### III.  CONCLUSION

This court need not paint the lily. Having considered and rejected the remainder of plaintiff's arguments, it concludes that defendant is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment is hereby **DENIED** and defendant's cross-motion for summary judgment is hereby **GRANTED**.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[5] Indeed, in deciding whether to grant injunctive relief in cases involving overrides of the GAO automatic stay, several bid protest decisions of this court have operated on the reasonable assumption that extensions under the 217-8 clause were available even though all the options in a contract had been exercised. *See, e.g.*, *PGBA*, 57 Fed. Cl. at 662; *Unified Indus. Inc. v. United States*, 24 Cl. Ct. 570, 574-75 (1991).